## Cecil v. Cecil.

(Decided October 12, 1923.)

### Appeal from Jefferson Circuit Court.

1. Divorce—Evidence Held to Sustain Denial of Divorce to Husband and Grant to Wife.—In action by husband for divorce on ground of desertion, evidence of husband's conduct causing wife to leave held to sustain judgment in so far as it denied a divorce to the plaintiff, and granted a divorce to the defendant from bed and board.
2. Divorce—Qualified Divorce Granted, Where Interests of Parties, the Children, and Society Require it.—A wife is entitled to a qualified divorce from bed and board, where her evidence fails to

sustain statutory grounds for absolute divorce, if, in the sound judgment of the chancellor, the interests of the parties, their infant children, and the good of society demand it.

3.  Divorce—Alimony in Lump Sum Permitted on Qualified Divorce.— Chancellor may allow a lump sum as alimony to a wife, granted a divorce from bed and board.

4.  Divorce—Ability of Husband to Pay, Including Ability to Make Money, Considered in Allowing Alimony.—The amount of alimony and the manner of its payment depend on the facts and circum- stances, and the ability of the husband to pay is always prominent, and in determining his ability to pay, not only his accumulated property and his income therefrom, but his ability to earn money as well, must be considered.

5.  Divorce—Award of Alimony Held Excessive and Reduced.— Award of alimony to wife, obtaining divorce from bed and board, of a lump sum of $2,000.00 and $150.00 per month, in addition to $50.00 a month for a child's support, was excessive to the extent of the lump sum, where the husband's only property consisted of an income from an estate which could hardly average more than $4,500.00 a year; the husband also being required to pay wife's attorneys $1,000.00 and the cost of the action and his own at- torneys, aggregating $4,000.00 or more.

6.  Divorce—Allowance of $1,000.00 for Counsel Fees Not Excessive. —Allowance to wife of $1,000.00 for her counsel fees in a divorce aciton held not excessive, if it included their services rendered in the Court of Appeals, as well as in the trial court.

7.  Divorce—Allowances Pending Appeal Held Proper.—In a divorce case, the court properly provided for monthly allowances to wife and child pending an appeal, where they were the same in amount as the permanent monthly allowances, which were not to begin until entry of final judgment.

8.  Divorce—Error to Sustain Attachment Without Allegation of Fraud.—Where wife, obtaining limited divorce, in her affidavit to procure attachment simply alleged that husband was assign- ing his property to others, and that unless restrained he would sell, convey and conceal his property, without alleging or proving that he did do so fraudulently, it was error for the court to sus- tain the attachment, under Ky. Stats, section 2124.

SHACKELFORD MILLER for appellant.

GARNETT & VAN WINKLE and HENRY JACKSON for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming in part and reversing in part.

Appellant and appellee were married in 1896, and lived together without evidence of serious friction until after, or shortly before, the death of the former's father in 1915. The latter, by his will, devised the fee in his large estate to his grandchildren, and provided that his

children should receive only such portions of the net income therefrom as named trustees deemed proper from time to time.

His children, appellant and his two sisters, contested the will upon the grounds of mental incapacity and undue influence, and in that litigation appellee sided with her children, two of whom were about grown, rather than with her husband. The relations between appellant and appellee have never been cordial since, although an amicable settlement of the contest was finally effected. They ceased to appear together in public, and later occupied separate apartments in the home.

In May, 1917, appellee left appellant, and in due time he filed this action for divorce upon the ground of one year's abandonment without fault upon his part. Admitting the fact that she left appellant in May, 1917, and had lived separate and apart from him since, appellee denied that she abandoned him without fault upon his part, or at all, and charged that continuously and habitually for more than six months theretofore his conduct had been such as not only to justify her action in leaving him, but was so cruel and inhuman as to indicate a settled aversion toward her, and permanently to destroy her peace and happiness. She made her answer a counterclaim for divorce—but from bed and board only—with alimony and an allowance for the maintenance of their ten-year-old child, who resided with her, and for attorneys' fees.

The chancellor dismissed appellant's petition, granted appellee the relief she asked, and from that judgment he has prosecuted this appeal.

The grounds urged for reversal are: That the court erred in denying a divorce to appellant, in granting even a qualified one to appellee, and in allowing her alimony in a lump sum, or at all, and that in any event the allowances for alimony and attorney fees are excessive, and there were no grounds alleged or proven for the attachment issued against appellant's property which the court sustained.

The facts we have stated above are either admitted or established by the evidence for both parties. In addition, the evidence of the wife, the two grown children—a son and a daughter—and most, if not all, of the witnesses who were about the home from the death of appellant's father in 1915 until the separation in 1917, shows that during that time appellant was away from home a great deal, the

most of the time of necessity but often from choice; and that when at home his conduct toward his wife was such as that no other course was left open to her, consistent with her self-respect, but to leave him, if in fact it were not such conduct as falls more properly within our definition of the statutory "cruel and inhuman treatment," which entitles a wife to an absolute divorce if she is without fault. .

A part of this conduct, which appellant does not deny, consisted of frequent statements to his wife and others that he desired a divorce and that she should leave his home. Some of these witnesses even go to the extent of saying that he expressed an intention of forcing his wife to leave him. There is no pretence of proof by any witness of fault of any kind upon the part of the wife at any time, unless her conduct in siding with her children rather than with her husband in the will contest could be so construed, but for which even the appellant does not contend.

The proof for the appellant consists in his own denials or explanations of his conduct as described by witnesses for the appellee, and of proof by himself and others that he provided a comfortable living for his wife; but none of his witnesses professed familiarity with his conduct in his home towards his wife, and he makes no claim for himself that he exhibited toward her or had for her any affection during the two years preceding the separation.

He further admits, and his conduct both before and since the separation clearly proves, that he neither sought nor desired a reconciliation.

We therefore conclude that the evidence fully sustains the chancellor's judgment in so far as it denied a divorce to the husband and granted a qualified one to the wife, especially since, under the repeated decisions of this court, a wife is entitled to such relief even where her evidence fails to sustain statutory grounds alleged for an absolute divorce, if, in the sound judgment of the chancellor, the interest of the parties, their infant children and the good of society demand it, as we are convinced from the evidence is the case here. Evans v. Evans, 93 Ky. 510, 20 S. W 605; Irwin v. Irwin, 96 Ky. 318, 28 S. W. 664, 30 S. W. 714; Zumbiel v. Zumbiel, 113 Ky. 841, 69 S. W. 708; Ramsey v. Ramsey, 162 Ky. 741, 172 S. W. 1082; Burns v. Burns, 173 Ky. 105, 190 S. W. 683; Phillips v. Phillips, 173 Ky. 608, 191 S. W. 482.

From this conclusion, and the fact that the wife has no property or income of her own, it also results that the court did not err in making her an allowance for her support, and we need consider only whether the court erred in allowing appellee, as alimony, a lump sum of $2,000.00, and $150.00 per month.

It is first urged that where the wife is granted a divorce from bed and board only, a lump sum allowance as alimony is never permissible, and that the $2,000.00 allowed to appellee is therefore illegal. In support of this contention the only Kentucky case cited which so holds is Caskey v. Caskey, 4th Ky. L. R. 811, decided by the superior court in 1883, but that decision was rested upon general principles and not upon the kind of divorce granted. It is not only so indicated in that opinion, but in Ray v. Ray, 4th Ky. L. R. 902, the same court at the same term applied the same doctrine where an absolute divorce was granted the wife; showing conclusively that the character of divorce granted was not regarded by the court as material. The same theory, based upon general principles or statutory regulations, is also held by the courts of some other jurisdictions. This court, however, has never held in any case that alimony must be calculated upon or derived from the husband's income alone, as matter of law. Upon the other hand, we have always recognized the chancellor's right and duty to grant alimony either in one sum or in installments, depending upon all the facts and circumstances of each case, and not alone upon the husband's income or the kind of divorce granted.

The general rule in states having statutes such as ours, is thus stated in 19 C. J. 260:

"Statutes authorizing the granting of a divorce from the bonds of matrimony as well as from bed and board, and empowering the courts to make such orders for alimony, or the maintenance of the wife, as shall be deemed reasonable and just, have been liberally construed so as to authorize the allowance of permanent alimony, either in gross or in installments, as the best interest of the parties and the circumstances of the case seem to require; this discretionary power to award a gross sum has not been limited to cases of divorce from bonds of matrimony, but has been exercised where the divorce was from bed and board."

We have followed this rule consistently, and neither this court nor any other, so far as we know, has ever recognized any distinction in the manner in which alimony shall be paid based upon whether the divorce granted was absolute or qualified. In one case, at least, Pearson v. Pearson, 166 Ky. 91, 178 S. W. 1164, a judgment was affirmed by this court where the wife was granted a divorce *a mensa et thoro,* and alimony allowed in a lump sum; and there probably are about as many cases making the alimony payable one way as the other, where an absolute divorce was granted. Hence the contention that the allowance in a lump sum as alimony should be reversed upon legal grounds, is not sustained by the authorities, and is denied.

As the amount of alimony and the manner of its payment depend upon the facts and circumstances of any case, many considerations are pertinent, but the ability of the husband to pay is always prominent, and in determining his ability to pay, it is manifest that not only his accumulated property and his income therefrom, but his ability to earn money as well, must be considered.

Counsel for appellant has wholly ignored this latter element in his argument that the alimony allowed is excessive, although appellant is but forty-eight years of age, and both qualified and able to earn something, at least. He has no dependents other than appellee and their infant child, and under a settlement of the will contest made in 1921, he was to receive $15,000.00 in cash and to have for life four-sevenths of the net income from Melrose farm, and one-third of the net income from the Salt river farm. It was shown without contradiction that these farms are worth approximately $100,000.00 and $200,000.00, respectively, and, as we understand the evidence, which is not very clear, appellant's income therefrom, based upon the average net earnings for the past five years, has amounted to about $4,500.00 a year, but for the year 1920—owing partly to extraordinary expenses— amounted only to about $2,000.00 .

The $15,000.00 awarded appellant in the contest case, and a like sum awarded to each of his sisters, was subject to equalization charges for advancements theretofore made to them by the trustees, and there was in fact due him on this account only about $9,000.00. Within a short time after the contest case was settled, and before the issuance of the attachment herein, appellant had assigned

to others by written orders to the trustees, all but about $1,500.00 of the $9,000.00 due him, but there is no proof that any of these assignments does not represent a valid debt against appellant. There were no accumulated profits on hand, and apparently appellant has no property except his claim against the estate for about $1,500.00, and his interest in future rents derived from the two farms.

The total indebtedness of the estate amounts to about $30,000.00, but it owns notes and other personalty available for its debts worth approximately $24,000.00, leaving a net indebtedness of $6,000.00—including the $1,500 due appellant—that ultimately must be paid by the trustees out of revenues derived from the two farms referred to above. A part of this indebtedness, and probably more than the $1,500.00 due appellant, will therefore have to be paid out of the income that otherwise would be payable to him. Hence it seems quite clear that appellant's only property consists of an income from his father's estate, which can hardly average more than $4,500.00 a year, and may be much less in any one or more years.

In addition to the $2,000.00 in cash the judgment requires him to pay his wife, he must pay her attorneys $1,000.00, the costs of the action, and his own attorneys, aggregating probably $4,000.00 or more, or about his entire prospective income from his father's estate for the current year; and he must also pay for the support of his wife and child, their monthly allowances aggregating $2,400.00 a year. Hence, in order to comply with the judgment, he must earn this year $2,000.00 or more above his own living, and, while he is no doubt capable of earning money, he is not at present, nor has he been for some time, profitably engaged.

Under these circumstances, we seriously doubt his ability now, or soon, to meet the cash obligations imposed upon him by the judgment, and hereafter sustain himself and pay the monthly allowances to his wife and son, and conclude, therefore, that to the extent the court required him to pay his wife $2,000.00 in cash, the judgment for alimony is excessive, but to that extent only, for we are convinced that she is entitled to receive, and, if relieved of this item, but not otherwise, he will be able now and hereafter to pay the $150.00 per month allowed for her support and the $50.00 allowed for their infant son's support.

The allowance of $1,000.00 to her counsel for their services is also vigorously attacked, and for the services rendered in the lower court alone we regard it as excessive, but we do not consider it too high for their services rendered in the lower court and in this court. Therefore, on the authority of Green v. Green, 152 Ky. 486, 153 S. W. 775, that part of the judgment will not be disturbed, but the allowance will cover the services of appellee's counsel in both courts.

Complaint is also made of the action of the lower court in allowing to appellee $150.00 a month for herself, and $50.00 for her son for maintenance, pending the appeal. But such allowances were properly made by the trial court. Pemberton v. Pemberton, 169 Ky. 476, 184 S. W. 378; Napier v. Napier, 186 Ky. 558, 217 S. W. 683. The allowances are the same in amount as the monthly allowances for alimony, etc., the one for maintenance pending final judgment and the other to begin with that date. They will not, therefore, overlap, and will not be disturbed.

The final complaint is that no ground was either alleged or proven to authorize an attachment, and that the court erred in sustaining same. Section 2124 of the statutes permits a wife, suing for divorce, to attach her husband's property without bond, "where there is reason to suspect that he will fraudulently sell, convey, or conceal his property."

Although evidently proceeding under this statute, and because appellant was assigning to others a large part of the sum due him on the will contest settlement, appellee simply alleged in her affidavit to procure the attachment, that unless restrained he would sell, convey and conceal his property, without alleging that he would do so fraudulently. Nor did she attempt to prove that any of these assignments were fraudulent.

We are therefore of the opinion that the court erred in sustaining the attachment.

Wherefore the judgment is affirmed in all respects except in so far as it allows appellee $2,000.00 in cash and sustains the attachment, in which respects it is reversed, with directions to amend it as herein indicated.