## Turner, et al. v. Turner.

(Decided May 23, 1924.)

## Appeal from Butler Circuit Court.

1. Husband and Wife—Husband Held Not Justified in Demanding Separation from Wife.—In action for maintenance and to set aside separation agreement and deed to third party, facts held not to show that husband was justified in demanding separation.

2. Husband and Wife—Evidence Held to Support Finding of Fraud in Separation Agreement and Deed to Third Party.—In action for maintenance and to cancel separation agreement and deed to husband's brother, evidence held to support finding of fraud on part of husband and brother.

3. Estoppel—Warranty Estops Claim of Inherited Interest.—One executing warranty deed to grantee of mother is estopped to claim any inherited interest from mother.

4. Husband and Wife—Court May Award Lump Sum for Maintenance of Wife.—It is competent to render judgment in lump sum in action for maintenance, even in absence of grounds for absolute divorce.

5. Husband and Wife—Lump Sum May be Awarded Wife in Absence of Prayer for Divorce.—In action by wife for maintenance, a judgment in lump sum may be rendered for wife, even in absence of prayer for absolute divorce or one from bed and board.

G. V. WILLIS and GAINES & GARDNER for appellants.

E. N. MAYHUGH for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Appellant and defendant below, Roy Turner, and the appellee and plaintiff below, Lou Turner, were married on April 25, 1921, in Butler county, Kentucky. It was the second venture for each of the parties on the matrimonial bark, although they were yet comparatively young in years. They each had children by their first marriage and plaintiff since the death of her first husband had lived with her father-in-law, a Mr. Anderson, with whom also resided a bachelor son, Veachel Anderson, a brother-in-law of plaintiff, and who was about forty years of age. Plaintiff obtained from the estate of her first husband about $700.00 in personal property, which she had at the time of her marriage to defendant. After the marriage she moved but a short distance away to the home of her newly acquired husband carrying with her, of course, her infant children. So far as the proof shows, she presided over the household of her

husband as truly becomes a loyal wife, until the morning of June 24, 1921, just fifty-nine days after the marriage, when she was informed by her husband for the first time that he was dissatisfied with the marriage relation and that he had concluded that they had best "shake hands and say good-bye." The gruff and unceremonious announcement not only astonished plaintiff, but greatly shocked and grieved her. Her husband, however, made known his determination and told her that he had arranged with his brother, the defendant, Callie Turner, to represent him and asked her to select her representative and for the two to meet and draw up a contract of separation which was to include a settlement of the property rights between the parties. In her dethroned and perturbed condition, plaintiff consented to the proposition of her husband and selected her brother as her representative, and he and defendant's brother met later in the day at the residence of the parties when the defendant was absent, but the plaintiff was present in the house though crying and weeping practically all the time. A contract was drawn up, but it is not made a part of this record though pertinent excerpts therefrom are contained in the record, and they show that it was agreed that defendant would not oppose the granting of a divorce to plaintiff and that he would pay the cost thereof should an action therefor be filed by her, and in settlement of the property rights he agreed to pay her $250.00, $100.00 cash and a note for $150.00 signed by his brothsr, Callie, as surety. The latter, speaking for his brother, the defendant, immediately upon the execution of that agreement informed plaintiff that a tenant on the place would be ready later in the day to haul her household goods away from the house and take them to whatever place she desired, which was accordingly done, plaintiff not seeing her husband any more after he delivered to her his parting message in the earlier part of the day.

Before cashing the check, plaintiff realized the cold and inconsiderate treatment that she had received from her husband and she offered to return to him the check and the note, and afterwards filed this action in the Butler circuit court against him and his brother, Callie, praying as against the former that the settlement contract be set aside because of fraud and concealment in its obtention and her disturbed mental condition at the time, and she prayed for a judgment against him for her main-

tenance. She also sought against both defendants the cancellation of a deed which she and her husband executed to his brother the day or second day before the execution of the settlement contract, on the ground that it was made in fraud of her marital rights and to prevent her from recovering alimony or maintenance when the separation, already determined upon by her husband, should occur. She also alleged in her petition wrongful treatment at the hands of her husband and that he refused to support her and drove her from his home without fault on her part. The answer denied the allegations of the petition and relied on the separation agreement. Issues were formed by subsequent pleadings, and after proof taken, much of which was incompetent, the court cancelled the separation agreement, adjudged the deed to the husband's brother as in fraud of plaintiff's rights and sustained the attachment which she obtained upon the filing of the suit and which was levied upon the land, and gave plaintiff a judgment against her husband for $500.00, an attorney's fee of $100.00 and the cost of the action, together with a small allowance pending the suit in the circuit court. From that judgment defendant prosecutes this appeal.

The defendant, Roy Turner, seeks to justify his unnatural and, as we think, unjustifiable conduct, upon the ground that the father-in-law and brother-in-law of plaintiff wrongfully interfered with his rights as her husband, in advising her after the marriage with reference to her duty in preserving for the benefit of her children the personal property she obtained from her first husband, which advice from them seems to have been very offensive to the defendant and as he insists justified his separation from his wife and shipping her to other quarters. The record does not disclose any quarrels or disturbing contentions on the part of plaintiff growing out of that matter. On the contrary, it appears from the record that she possessed a gentle and noncombative disposition and fully comprehended her wifely duties with an accompanying desire to perform them. She, of course, wanted to observe the right and proper course with reference to her pittance of property, and if it was her duty to preserve it and expend it for the benefit of her children, from whose father she obtained it, she desired to do so, but she neither assumed nor manifested to the defendant any fixed or determined purpose to do so; nor does it even appear that he insisted otherwise,

but his grievance seems to have rested upon only the fact that such advice was given to his wife by the relatives of her first husband instead of by himself; and which action on their part he concluded was a gross interference with his rights. Under the law, as it now stands, the personal property obtained by plaintiff from her first husband was her separate estate and defendant had no rights in it over and beyond what might be given him by his wife, and it requires no further comment to show that this ground of justification is wholly without merit.

A second justification for his conduct, as urged by the defendant, was a veiled intimation by him that plaintiff was unduly familiar with her brother-in-law, Veachel Anderson, who with her father-in-law gave her the advice to which he objected. In support of this contention the proof shows that the children of plaintiff were very much attached to their uncle, which attachment was reciprocated by him. About twice per week during the fifty-nine days plaintiff and defendant were married and living together the brother-in-law, while driving his automobile, would pass by and stop in front of the house and more frequently than otherwise he would not get out, but the children and sometimes plaintiff would come to the front gate and converse with him. Once or twice he got out of the automobile and went into the house, but in no case was his visit accompanied with the slightest suspicious facts or circumstances. It is also in proof that he went with plaintiff to the merchant to obtain her wedding trousseau when she married defendant. The foregoing is all the evidence to sustain this alleged justification and it is perfectly apparent that it must share the same fate as the first one.

On the question of fraud, as well as the overreaching of plaintiff in the execution of the settlement agreement, we think the testimony is abundantly sufficient to support it. She was not only ignorant of her rights as well as the extent of the property owned by her husband, but she was so overwhelmed by the precipitate action on the part of her husband in demanding the separation and the execution of the agreement that she could scarcely be considered as being in proper condition to understandingly enter into it. The record contains no evidence that she knew the extent of her husband's estate, and she testified without objection that she did not know it; ·

and the purpose and intention of the husband in procuring the settlement is overwhelmingly established.

We have also arrived at the same conclusion with reference to the deed conveying defendant's land to his brother. Plaintiff signed that deed not exceeding forty-eight hours before she was driven from defendant's home in the manner hereinbefore stated, and at that time not the slightest intimation of any such contemplated action was imparted to her, and she thought that the sale of the land was but an ordinary and usual one in the common affairs of life. Neither did she know the consideration expressed in the deed, since she appears to have been willing to confide such matters exclusively to her husband. On the other hand, it is shown that the consideration of $1,000.00 expressed in that deed was scarcely half the value of the land and the unwillingness of defendant to tell in his deposition his disposition of that sum or where he had it deposited, together with many other facts and circumstances clearly established the fact that he executed the conveyance solely in anticipation of the concealed separation between himself and wife which he then intended to bring about within the next few days. It is also shown by unerring and convincing circumstances that defendant's brother, the vendee in that deed, was fully cognizant of the purpose of the husband in its execution.

But, it is insisted that after the deed was executed it was discovered that the husband did not obtain title to certain aliquot parts of the land conveyed through a deed executed to him by his mother several years prior thereto because of the fact that his father, who was living at the time the mother executed her deed, did not join in it. However, the heirs of the mother were not made parties to the action, but if they had been, defendant had obtained a portion of his title from some of them and they would be estopped to claim any inherited interest from their mother because of the warranty in their deeds to him. Besides, defendant owned other property than the land conveyed under his fraudulent deed to his brother, and we are not prepared to say that the judgment is excessive even if he should lose any part of the title to the land conveyed to his brother.

That it is competent for a court to render judgment in a lump sum in actions of this kind by the wife, even in the absence of grounds for an absolute divorce, has been thoroughly settled by the opinions of this court.

Hulett v. Hulett, 80 Ky. 364; Breen v. Breen, 28 Ky. L. R. 1216; George v. George, 190 Ky. 706; Cecil v. Cecil, 200 Ky. 453, and other cases referred to in those opinions. In the Hulett, Breen and George cases, it is furthermore held that such a judgment may be rendered even in the absence of a prayer for either an absolute divorce or one from bed and board, since the theory of the action is to provide maintenance for the wife, who is without fault, which her husband wrongfully withholds from her.

Perceiving no error in the judgment it is accordingly affirmed.