## Harley et al. v. Harley et al.

(Decided May 15, 1934.)

BECKHAM OVERSTREET and CLARÉNCE G. BARRICKMAN for appellants.

HENRY TILFORD for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming in part and reversing in part.

The appellant Jane T. Harley, and appellee Oliver E. Harley were married on the 17th day of January, 1932, and lived together until May 15, 1932, at which time they separated and soon thereafter Mrs. Harley filed this suit in the Jefferson circuit court asking for a divorce from bed and board and for alimony; and also for the cancellation of a deed from Oliver E. Harley to the appellee Leslie Harley, which deed was executed just previous to their separation. For convenience we will hereinafter refer to Jane T. Harley as plaintiff and Oliver E. Harley as defendant, according to their respective status in the lower court.

At the time plaintiff filed her original petition, she and defendant had been married about four months only

and no right of action had accrued to her for absolute divorce on ground of abandonment (one year), nor on ground of cruel treatment (six months), and she only asked for divorce from bed and board and alimony. Later, after the expiration of six months after their marriage, she filed her amended petition asking for absolute divorce on ground of cruel treatment, and for alimony as set out in her original petition. Leslie Harley was made a party defendant for the purpose of cancellation of the deed from his father to him as above stated.

Both parties had previously been married. Defendant's first wife had been dead several years, leaving three sons, appellee Leslie Harley and two other younger sons.

Defendant and his three sons by his former marriage lived alone, doing their own cooking and housework. In the fall of 1931, defendant advertised in the papers for a housekeeper. Plaintiff responded to the advertisement and defendant employed her as housekeeper at a salary of $5 per week. A short while after she went into his home as housekeeper they became intimate. According to the testimony of defendant, they had intercourse the third night she stayed in his home. She denied in her testimony that they had intercourse on the third night, but admitted that they did so within about one month after she went into his home. They discussed getting married, and, according to the testimony of plaintiff, defendant promised to marry her and insisted on the marriage. He procured a marriage license from the county clerk's office and it was published in the papers that such license had been issued and the belief became prevalent in the community that they were married. However, defendant deferred the marriage and in the meanwhile plaintiff was insisting on a consummation of the marriage. She said that her friends and neighbors were congratulating her and talking to her about the marriage, believing, of course, that she and defendant were married. She told him that she did not want to live with him as his common-law wife and continued to insist that he marry her. It is apparent from the record that some unpleasant feelings and disagreement developed between the parties and they frequently quarreled and argued about the marriage and other matters. These conditions went along, apparently from bad to worse, until about January 1,

1932, at which time defendant discharged plaintiff from his employment and refused to marry her. She consulted a lawyer with the view of instituting suit against him for breach of the marriage contract, and, after some negotiations, the marriage was finally consummated on January 17, 1932, as above stated. However, they continued to quarrel and disharmony was prevalent in their home. Plaintiff had a 17 year old son by her former marriage whom she finally brought into the home with her and defendant and some disagreement arose between her son and defendant and his boys. He insisted that she leave his home and that they separate, which she refused to do. A few days previous to their separation defendant executed a deed to his son Leslie Harley, who was then 21 years of age, conveying to him all his property which consisted of about six separate pieces of real estate. It is admitted that no consideration passed between the parties for the conveyance, but defendant claims that this property was all willed to him by his first wife, the mother of his three sons, and that it had always been his intention for her children to have the property. Immediately after this deed of conveyance was executed, he forced the separation of himself and plaintiff, and soon thereafter she filed this suit as above indicated.

Defendant filed his answer and counterclaim in which he denied the allegations of the petiton and amended petition, and asked by his counterclaim that he be granted a divorce on grounds that their marriage was procured by duress, fraud, and misrepresentations. The appellee Leslie Harley failed to plead to the action as against him seeking cancellation of the deed. The proof was taken and the action submitted to the chancellor whereupon he dismissed the counterclaim of defendant and granted plaintiff an absolute divorce and alimony in the lump sum of $800 and her costs, including $350 for her attorneys' fees, but failed to either grant or refuse her request for a cancellation of the deed.

Plaintiff, together with her attorneys, prosecute this appeal from that judgment on ground that the sums allowed by the chancellor for alimony and attorneys' fee were too small and insufficient, and the failure of the chancellor to cancel the deed. It is insisted that defendant's property is of a net value of $15,000 and that plaintiff should have been adjudged alimony in the sum

of $5,000, and that she should have been allowed the sum of $500 for her attorneys.

No brief appears in the record in behalf of appellee and the contentions of appellant are not responded to. However, upon an examination of the record, it is our conclusion that the evidence and pleadings sufficiently support the chancellor in granting plaintiff a divorce and alimony. This leaves for determination the questions whether or not the respective sums allowed by the chancellor for alimony and attorneys' fee are adequate, and whether he should have canceled the deed in question, and subjected the property to the payment of sums adjudged against defendant.

Respecting the value of defendant's property, the evidence produced for plaintiff conduced to show that his property was worth approximately $25,000 less, however, about $5,000 incumbrances thereon, leaving a net value of approximately $20,000. On the other hand, defendant claims that his property, less the incumbrances, has a net value of approximately $10,000. Defendant stated that he listed his real estate with the assessor for taxation at $15,000. It is a matter of common knowledge that, as a rule, people do not list their property at a fair market value for taxation. The fact that defendant listed his property at $15,000 for taxation is persuasive that it has a market value in excess of that sum. We are of the opinion that defendant's real estate has a net value of approximately $15,000. It is further shown that he has considerable personal property, but the record does not disclose the amount, nature, or value of same.

It is argued for plaintiff that she should be allowed alimony in the sum of $5,000 which is approximately one-third the value of defendant's real estate, not taking into consideration his personal property. It is insisted that a general rule has been adopted by this court in cases where, as in the case at bar, the wife has no property or income, she should be allowed alimony in a lump sum equal to approximately one-fourth to one-third the net value of the husband's estate. To support this contention plaintiff cites a number of cases in which the rule above indicated was adopted by this court. But the facts in those cases are not analogous to the case at bar.

But it will be remembered, however, that neither

the statutes nor this court has established an unalterable or fixed rule as to the amount of alimony to be allowed wives obtaining divorces. The right is always reserved to dispose of such cases upon the facts and circumstances of each case.

As a rule, in cases where this court has allowed liberal sums of alimony, are those where the parties had lived together many years and the wife assisted in the accumulation of the husband's estate or, upon a showing that the husband was wholly at fault respecting the divorce.

In fixing an equitable sum of alimony, the court should take into consideration the husband's estate, income, and earning capacity, age, and ability to labor, the principal causes of the divorce, and the relative responsibility of the parties therefor, and ascertain whether or not the wife has aided in accumulating the husband's estate, and other pertinent facts and circumstances. Watkins v. Watkins, 202 Ky. 141, 259 S. W. 20, 24.

Plaintiff and defendant lived together only a few months and there is no contention that she assisted in the accumulation of his estate. But as said in the Watkins Case, supra,

"* * * nevertheless, he assumed the burden of her support when they entered into the marriage contract, and evidence discloses the fact that she is now practically without means and past that age when she might enter the world to earn a competent livelihood."

The record discloses that plaintiff is 43 years old, has no property or other means of support, and is dependent only on her labor as a housekeeper and other similar work, at the meager salary of $5 per week. It has long been the settled rule in this state that where a divorce is granted upon the application of the wife, alimony follows as a matter of course, unless it appears from the record that the wife was wholly at fault or guilty of such moral delinquency as to forfeit her right to alimony. Moore v. Moore, 231 Ky. 829, 22 S. W. (2d) 251.

A divorce having been granted plaintiff upon her application, it follows, necessarily, that she is entitled to alimony in a reasonable sum, taking into considera-

tion defendant's financial standing and ability to pay and in view of the history and circumstances which brought about their marriage and matrimonial trouble. While plaintiff produced grounds for divorce, this does not mean that she was entirely faultless. She admits in her testimony that a short while after she went into the home of defendant as his housekeeper, they became intimate and she lived with him for a considerable time as his common-law wife previous to their marriage, and perhaps used this as a means to bring about their marriage. But this is not sufficient, however, to annul the marriage on defendant's application nor is it a bar to plaintiff's right of alimony; but it is at least a mitigating circumstance worth some consideration in fixing the amount of alimony. Under these circumstances plaintiff is not entitled to the liberal rule applied where the wife was not in any degree in fault or assisted in the accumulation of the husband's estate, entitling her to alimony in a sum equal to one-third the net value of the husband's estate. In this case we do not think that equity demands such an allowance. But taking into consideration defendant's ability to pay and plaintiff's destitute financial condition, our conclusion is that $800 is inadequate and she should be allowed the lump sum of $1,500 alimony.

It is insisted that the sum of $350 allowed plaintiff by the chancellor for her attorneys is inadequate for the services performed. The evidence taken is quite voluminous, consisting of about 400 typewritten pages. The testimony was taken in open court and transcribed by the court's official reporter. This constitutes the principal part of the services rendered. The pleadings are short and simple. The record discloses that there were many "steps" or "practice motions" entered, but this was of a routine nature and did not require a great deal of time or labor. After a careful review and consideration of the record relating to the services of attorneys, our conclusion is that the sum allowed by the chancellor is adequate. This court will not be disposed to disturb the finding of a chancellor in allowing attorney fees, unless it is clearly shown that such allowance is inadequate and contrary to a sound discretion.

Respecting the cancellation of the deed from defendant to his son and codefendant, Leslie Harley, it is admitted that there was no consideration passed between the parties and that this conveyance was volun-

tary. Defendant does not claim that any consideration was paid, but that it had always been his intention that his first wife's children should have his property because she left it to him by her will. But, the fact that he deeded all of his property to one only of her children and the only one who was sui juris or capable of reconveying the property to him, is indeed, significant. The argument that he deeded his property to Leslie Harley for the purpose of putting it out of the reach of his wife and that Leslie would reconvey it to him, is very persuasive. The grantee, Leslie Harley, did not file any answer or otherwise resist the cancellation of the deed. He stated in his testimony that he never knew or heard anything about his father intending to convey this property to him or to any of his mother's children, until on the morning the deed was made. The conclusion that this conveyance was fraudulent so far as plaintiff's rights are concerned, is inescapable.

For reasons indicated the judgment of the chancellor as to the allowance of $350 to plaintiff for her attorneys' fee is affirmed. The judgment for alimony is reversed and remanded with directions to enter judgment allowing plaintiff the lump sum of $1,500, and if the judgment for all these items—alimony, attorneys' fees, and cost of action—be not paid or satisfactorily secured within sixty days from the entry of such judgment, the chancellor will enter judgment setting aside and canceling the deed in question and subject the property or so much thereof as may be necessary, to the satisfaction of the judgment, all of which is remanded for proceedings consistent with this opinion.