## Polivick v. Polivick et al.

(Decided May 28, 1935.)

654

BEN S. ADAMS for appellant.

HOLIFIELD, GARDNER & McDONALD for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming in part and reversing in part.

The appellant, Floyd Polivick, and appellee, Olva B. Polivick, were married in October, 1925, and to that union three children were born. The first child was born in November, 1926, the second one in August, 1928, and the third in June, 1930. In the summer or fall of 1930, the appellant became in failing health, which condition continued up to February 6, 1931, when he was tried and adjudged insane and sent to the Western Kentucky Hospital at Hopkinsville for mental treatment, where he remained except for a short period of time until he was finally released on or about April 20, 1933.

On April 19, 1933, appellant's sister, Mrs. Elsie

Timmons, and Clyde Brown, were appointed and qualified in the Carlisle county court as appellant's committee, and upon their application to the superintendent of the hospital he was released. Soon thereafter on the 15th day of May, 1933, his wife, the appellee, filed a suit against the appellant and his committee alleging that his land and personal property was of less value than $1,750 and asked the court to adjudge it and its possessions to her.

On June 6, 1933, appellant was tried by the Carlisle circuit court and adjudged to be a person of sound mind and his property was restored to him. About three days thereafter, appellee filed this action against appellant for divorce, alimony, and the custody of the children.

In her petition she alleged the date of their marriage and the births of the respective children, and further charged that for six months previous to their separation and while appellant was sane, he habitually behaved toward her in a cruel and inhuman manner as to indicate a settled aversion to her and to destroy permanently her peace and happiness; that he was guilty of such cruel and inhuman treatment and attempted injury of her as indicated an outrageous temper of him and she was in danger of her life or great bodily harm by remaining with him; and that since his return from the hospital he had abandoned her and had not lived or cohabited with her or contributed anything to her maintenance or support or to her children. She further made the usual allegations for an order of attachment which she procured and had levied upon his property.

Appellant filed his answer and counterclaim in which he denied all material allegations of the petition and affirmatively pleaded that appellee abandoned him and that said abandonment was without any cause or fault on his part. He also alleged that she wrote to him, while he was in the State Hospital for treatment, that she never intended to live wih him again, and further charged that she interfered with and refused to obtain his release or discharge from the hospital.

He further pleaded that he was the owner of 54 acres of land, which was of the value of about $1,000, at the time he was taken to the hospital, on which place they had lived and resided, and that she had had the

use of this farm since February, 1931, and received the benefits therefrom, and had taken charge of about $400 in money which he had in the bank at Bardwell, and had drawn the money from the bank and spent it; and, in addition to this, he had live stock of the value of about $1,000 at the time he went to the hospital and which was left in her possession, and that she had used and disposed of its increase each year while he was in the hospital; and asked that she be required to return this property to him.

By reply and amended petition appellee denied the affirmative allegations of the answer and counterclaim and affirmatively alleged that after their marriage she turned over and delivered to appellant about $400 of her own money, which he had converted to his own use, and asked judgment against him for this amount in addition to her claim for alimony. This pleading was controverted by appellant, and upon the issue joined the chancellor rendered judgment adjudging the appellee was entitled to the relief sought and granted her an absolute divorce and the custody of their three children. It was further adjudged that she recover of appellant alimony in the sum of $900 for her own benefit payable at $15 per month until paid in full, and further adjudged that she recover for the benefit of the children the sum of $900 to be paid in like manner, and in addition thereto that she recover the sum of $200 for her attorney's fees to be taxed as cost and to be collected by execution or rule. The court also sustained the grounds of the attachment and ordered appellant's live stock and other personal property sold, and dismissed appellant's counterclaim.

Appellant excepted to the judgment as a whole and each item thereof and to reverse same he has brought this appeal. Appellee's attorneys, Holifield, Gardner & McDonald, are made parties to the appeal on the question of the sum allowed them as attorneys for appellee.

When appellant and appellee were married, appellant did not own any property or a home. They lived with appellant's father, H. L. Polivick, on the 54-acre farm here in question until his father died in 1928, and this 54-acre farm was allotted to appellant in the division of his father's estate. Appellant and his father made their living by farming and trading in live stock,

and it appears that they, including appellee, had all the necessities of life and lived as well as the average farmer of that community.

The evidence is voluminous, much of which relates to matters that occurred prior to the last six months just previous to the time appellant was sent to the hospital, which, according to appellee's testimony, was the time they separated. In appellee's testimony she goes back several years prior to their separation and tells of numerous unpleasant incidents that happened between her and her husband, but it is not necessary for us to consider these matters that occurred previous to the last six months they lived together. However, none of her testimony tends to show any serious trouble between her and her husband. She says that he was unkind to her and that he had threatened to whip her and on one occasion had threatened to take her life, but that was some time previous to their separation and they continued to live together up to February 6, 1931, at the time he was sent to the hospital.

Appellee introduced in her behalf nineteen witnesses, and appellant introduced in his behalf eighteen witnesses, and much of the evidence pertains to the property rights of the parties. The chancellor sustained exceptions to the depositions of appellee on the ground that in divorce actions husband and wife cannot testify against each other as to property rights. Singer v. Singer, 252 Ky. 707, 68 S. W. (2d) 34; Civil Code of Practice, sec. 606, as amended by Acts 1930, c. 21. It is insisted for appellee that her evidence is competent, and she complains of the action of the chancellor in sustaining exceptions to her deposition. But inasmuch as the court granted her all the relief asked, it is immaterial whether the sustaining of the exceptions to her depositions was proper or improper. But be this as it may, even if all the evidence is considered in the light most favorable to appellee, it is indeed doubtful that it is sufficient to sustain her charges of desertion, cruel treatment, and the grounds of attachment.

By section 950-1, Kentucky Statutes, no appeal may be taken to this court to reverse a judgment granting a divorce. The only questions, therefore, presented by this appeal are as to the property rights of the parties and custody of the children.

Appellee alleges that appellant obtained $400 of her money and used same, but her own testimony upon this question is not very convincing. A number of checks were produced but none of which had been indorsed by appellant, and it is apparent that a portion of this money, if not all, was used by herself. Appellant also complains that appellee squandered and used his money and personal property while he was in the hospital. It appears that she did use and had spent about $400 of his money and perhaps had received the benefits of other personal property; but, of course, she had the right to use such of his money and property as was necessary to support herself and children. While appellant was in the hospital, appellee drew his money from the bank in which he left it and deposited it in another bank. She also had $100 in the bank to her own account which appellant had given her. When appellant returned from the hospital, he and his committee endeavored to locate his property; but appellee refused to disclose its whereabouts, and they were unable to locate it until appellee revealed its location to the officers for the purpose of seizing it under the order of attachment which she had procured. With respect to the time and cause of their separation, we note the following questions and answers thereto, taken from the depositions of appellee:

"Q. State whether or not you and your husband are living together at this time? A. We are not.

"Q. Which left the other? A. It is hard to say. He went to the State Hospital, and I went to my father's. He left my father's and went to the hospital, since then, we have not lived together as man and wife.

"Q. You have been at your father's ever since? A. Yes, since the 6th of February, 1931."

It is further shown that for a while after appellant was sent to the hospital, appellee wrote him very friendly letters none of which indicated that there was any trouble between them. However, when she received information that appellant's mental condition was improving and he probably would soon be discharged from the hospital, she then wrote him that she did not intend

to live with him any more. It is also apparent that she made no effort or application to have him discharged from the hospital. But when his committee was appointed they procured his immediate discharge, and, as we have stated, soon after he returned home appellee brought suit for the possessions and use of his property, alleging that all of his property did not exceed the value of $1,750, and after he was adjudged sane, she then immediately brought this action.

It is apparent from the record that after appellant was sent to the hospital for mental treatment appellee became averse to him and sought to get rid of him. Her own evidence warrants this inference.

Since appellant's return from the hospital and at the time of this litigation, it is apparent that practically all of his personal property had been consumed. The little 54-acre farm constituted practically his only assets. It is shown that he is uneducated and untrained in any calling or occupation except farming, which has been his lifetime occupation. It is common knowledge, and perhaps useless to say, that the net earnings from the 54-acre farm of the value not exceeding $1,000, taking into consideration its location and the surrounding circumstances, would indeed be very meager. In fixing alimony the court will not only take into consideration the sum that the wife and children might conveniently use, but it will also take into consideration the ability of the husband to pay. Cecil v. Cecil, 200 Ky. 453, 255 S. W. 64, Harley v. Harley, 255 Ky. 370, 74 S. W. (2d) 195, 197.

In Harley v. Harley, supra, it is said:

"In fixing an equitable sum of alimony, the court should take into consideration the husband's estate, income, and earning capacity, age, and ability to labor, the principal causes of the divorce, and the relative responsibility of the parties therefor, and ascertain whether or not the wife has aided in accumulating the husband's estate, and other pertinent facts and circumstances. Watkins v. Watkins, 202 Ky. 141, 259 S. W. 20, 24."

In view of appellant's financial condition and ability to pay and the meagerness of the evidence with respect to his responsibility for the separation, it is our conclusion that the $1,800 alimony allowed by the chan-

cellor is entirely excessive. This sum was ordered paid at the rates of $30 per month—$15 per month for the children and $15 per month for the appellee—and in addition thereto, to pay appellee's attorneys the sum of $200, which was subject to collection by execution or rule, making a total of $2,000. It is our view that $15 per month is a reasonable sum of alimony for appellant to pay to both appellee and the children, and this sum should be allotted $10 per month for the benefit of the children and $5 per month for the benefit of the appellee. Change in allowances for alimony is subject to be reviewed by the chancellor at any time that a change of conditions may necessitate. We think that, for the time being, the sum above indicated would be proper until further orders of the court, without regard to any lump sum. And the same reason that applies to the alimony is applicable to the amount adjudged against appellant to be paid the appellees Holifield, Gardner & McDonald, attorneys for appellee Mrs. Polivick. In view of appellant's ability to pay and the conclusion we have reached with respect to the proper alimony to be allowed appellee and the children, we think $100 would be a reasonable attorney fee and the sum allowed by the chancellor should be reduced to $100.

We also conclude that the chancellor erred in sustaining the attachment and ordering appellant's property sold in satisfaction of the sums adjudged against him. There is no evidence tending to sustain appellee's allegations that appellant had attempted to or would fraudulently dispose of his property. Appellant denied appellee's allegations and grounds of attachment, and it was incumbent upon appellee to sustain her grounds of attachment by competent evidence the same as any other issue, and in the absence of such evidence the attachment should not have been sustained. Cecil v. Cecil, supra.

It is insisted for appellant that he should have custody of the older two children. But in view of the age of the children, we do not think it advisable to separate them. Furthermore, custody of children is always subject to the control of the chancellor, and on showing of change in conditions the chancellor may make such orders as to the custody of the children of divorced parents as he may deem proper under the proof and circumstances.

Wherefore the judgment is affirmed! as to the custody of the children, but reversed in all other respects, and remanded, with directions to enter judgment consistent with this opinion.