## Miller v. Miller.

(Decided April 19, 1929.)

BEN D. RINGO and E. A. TAYLOR for appellant.

HUBERT P. MERIDITH for appellee.

OPINION OF THE COURT BY COMMISSIONER TINSLEY— Affirming on cross-appeal and reversing on original appeal.

The appellant, Mary Grace Miller, and the appellee, Lucien Miller, were married in Rockport, Ind., June 20, 1925, when appellant was 18 years of age and appellee was 47 years of age, and lived together as husband and wife until some two or three weeks prior to February 19, 1927, when appellee instituted this action against appellant for divorce on the ground of adultery and such lewd and lascivious behavior on her part as proves her to be unchaste. Appellant traversed the allegations of the petition, and by counterclaim sought a divorce and alimony on the ground of cruel and inhuman treatment. The chancellor granted appellee the relief sought, and dismissed appellant's counterclaim, and she has appealed.

In so far as the judgment granted appellee a divorce, it is not subject to our review (Kentucky Statutes, sec.

950); but, in so far as appellant's right to alimony is concerned, it is subject to our review, and, if the facts be found such as to not entitle appellee to a divorce, to allow the wife alimony. Wesley v. Wesley, 181 Ky. 135, 204 S. W. 165.

We shall not undertake a detailed recital of the testimony, but will summarize it only so as to make clear the reasons upon which the case is determined.

At the time of their marriage appellee was, and had been for many years prior thereto, a substantial business man of Muhlenberg county—a man of considerable means. Appellant was a young girl, a daughter of a tenant farmer, reared in Daviess county, and some months prior to the marriage had come to Central City, where she was employed as a domestic. At that time appellee was married, although he and his wife were not living together. Appellant's youth and comeliness attracted appellee, and he began to pay court to her. Subsequently he had so far progressed in his court, that he took appellee to Hot Springs, Ark., where they occupied the same apartment for two or three weeks. Shortly after their return to Central City, appellee's wife died, and within two months thereafter he and appellant were married. It is difficult to determine just when the differences between them arose and what brought them about. However, it is apparent appellee entertained no doubt of his wife's fidelity until after their separation, and after she had taken the family automobile and certain securities belonging to him, and had gone to her sister's home in Louisville, where she instituted suit against him for divorce, which suit was subsequently dismissed after she and appellee had a conference and she had returned to him the securities taken. Appellant says that this conference was for the purpose of adjusting their differences; that they did so, and agreed to resume their marital relations; and as the result of which she surrendered the securities and dismissed her suit. In this she is corroborated by her mother who participated in the conference. Appellee says the conference was only for the purpose of securing the return of the securities; that they made no settlement of their differences, nor was there any proposition to that end; and he is corroborated by a witness who was present and says he was present at the request of appellee and his attorney. It is significant, however, that appellee filed this action the day following that conference.

To sustain his allegations, appellee shows by one witness that some time in the spring of 1927, a traveling salesman named R. C. Jones, who was living at the "Old Inn," a hotel in Central City, had frequent conversations over the public telephone in the hotel office with some woman; that there was an extension of this telephone some 12 feet away, and that this witness would listen in on Jones' conversation; that Jones and the woman would use endearing terms to each other, and on one occasion the woman with whom he was talking said she would be right over, and in a few minutes thereafter he saw Jones get in an automobile with appellant and drive away. By another witness employed at the hotel, it was shown that during the time Jones resided at the hotel, he frequently received large letters, addressed to him in the handwriting of a woman and postmarked Central City; and that while living at the hotel Jones' wife became jealous of him; and, on one occasion, attempted suicide because of her jealousy. By another witness it was shown that on two occasions, in the daytime, he saw Jones in an automobile with appellant, and on another occasion, in the daytime, at the railroad station, appellant asked the witness if he saw Jones get off the train. By another witness it was shown that on January 13, 1927, at 4 o'clock in the morning, he saw appellee board a train going to Louisville; that a man got off that train, and went to appellant's home, and that after the man stepped on the porch of the house the porch lights were turned on, and the man went into the house; that he was told this man's name was Jones. By another witness, a clerk at the hotel, it was shown that on the morning of January 13, 1927, a traveling man by the name of Jones came into the hotel after the train had arrived, about 4 o'clock in the morning, sat his grips down, and went out of the hotel, in the direction of Broadway and in the direction of appellant's home. By another witness, a woman residing in an adjoining house to appellant, it was shown that early in January, 1927, on a number of occasions, and between 9 and 10 o'clock in the forenoon each time, a man would come to appellant's residence, who would "kinda look around and watch up and down the street before going on the porch;" that she had since heard this man's name was Jones; that on January 13, 1927, about 9 o'clock in the morning she went to appellant's residence and asked her for permission to use the telephone, and that appellant refused, saying that her telephone was out

of order; that appellant was then preparing breakfast, although her usual time for that meal was between 6 and 7 o'clock; but about two hours later, appellant called to her that some one was calling her on the telephone, and she asked appellant to take the message for her, which was done, and that, so far as she knew, no one had been there to repair the telephone; that about 10 o'clock that morning she saw this man, whose name she has been told is Jones, leaving the house. This witness resides in a house belonging to appellee, and her father is employed by a water company of which appellee is the president.

After the appellant had taken her proof and after appellee had taken proof in rebuttal and had moved the court to submit the case, he took the depositions of two witnesses, Wilkins and Hardwick, upon matters admittedly in chief, and upon that ground the chancellor sustained exceptions of the appellant thereto. This action was proper. There is no more reason for permitting a party to introduce evidence in chief, by way of a deposition in an equitable action after he has introduced his rebuttal testimony, than there is to permit the introduction of such testimony, at such time, in an action at law. Appellee's complaint of this action of the court is without merit. Civil Code, sec. 592.

It is clear to us that the testimony on behalf of appellee does not prove any adulterous conduct upon the part of appellant. If true, the most that can be said of it, is that it indicates a lack of appreciation upon her part of those restraints upon liberty of conduct with which convention circumscribes married women, and that she was rather indiscreet. However, the traveling man, R. C. Jones, testified in this case. He says the first time he ever saw appellant was in the office of the water company of which appellee was president, when he had called to sell the company supplies; that appellant was the only person present at the time; and that he presented his business card to her, and was thus informally introduced. He next saw her some weeks later, in Greenville, where he met her on the street and had a short conversation, and some weeks later he got into an automobile in front of the hotel in Central City with her and her sister, Mrs. Carr, the latter of whom he had known some years, and drove around town with them for awhile; that these are the only occasions he was ever with appellant. He denied that he ever had a telephone conversation with appellant, and stated that the telephone conversations testified to

by appellant's witness were had with his double first cousin, a Mrs. Hunter, residing in the county, and with whom, and whose husband, he was on most friendly terms. He denied that he had ever received a letter from appellant. He denied ever going to the residence of appellee at 4 o'clock in the morning, or at any time; that he was never at their residence at any time, and did not know the location of it. He testified that there was never any lewd or immoral conduct between appellant and himself at any time, nor the slightest suggestion of any such conduct.

In the case of Anderson v. Anderson, 152 Ky. 773, 154 S. W. 1, where there was testimony to the effect that the wife often talked over the telephone with men, and that she frequently attended public dances and public boat excursions and danced with men with whom she had no previous acquaintance, and where suspicions such as here were raised, and in which one witness testified that the wife attempted to make an appointment with him, and which he attempted by innuendo to create the impression was for immoral purposes, we said:

"It is patently noticeable that not one of the many witnesses introduced in appellant's behalf has testified to appellee's guilt of a single lascivious act or to seeing her in a compromising situation with any man. There is no proof that she allowed improper liberties from men, or that she put herself in a position to invite them. At most, the evidence only shows that she was addicted to levity of conduct, dancing and other gaities, that led to social indiscretions. But such conduct, though blameable, was not inconsistent with a life of virtue, and a woman should not be convicted of a want of chasity on mere suspicion. . . . .

"In an action for divorce, circumstances merely suspicious are not sufficient to establish the wife's guilt of such 'lewd and lascivious conduct as proves her to be unchaste.' If the facts proved can be reasonably reconciled on the assumption of innocence the court will not infer guilt. . . .

"We are unwilling, upon such evidence as is here presented, to adjudge appellee unchaste and thereby destroy her reputation, cast a cloud upon the future of her children, and, perhaps, a doubt upon the legitimacy of their birth."

In the case of Hoagland v. Hoagland, 218 Ky. 636, 291 S. W. 1044, where four or five neighboring women testified to frequent telephone calls over their telephones, to the wife, from men with whom appointments would be made, and after which the wife would dress and go down to the city, and that frequently automobiles would stop in front of and near the residence of the parties, and men would go therefrom into the house in the absence of the husband and children; that the wife would frequently go into the city at night, and stay out until 11 or 11:30 o'clock, and for which she would give no account to her husband, we said:

"On the other hand, we are not prepared to say that the proven conduct on the part of plaintiff was sufficient to establish the ground of defendant's counterclaim. No one saw her in any compromising attitude or position with any man, and the proven facts, at best, if it had been undoubtedly established that the men who telephoned to her were strangers in blood, merely raise a suspicion, and we have held in a number of cases that the character of the wife will not be blackened by adjudging the truth of the charge from such merely suspicious circumstances alone."

To the same effect are the opinions in the cases of Evans v. Evans, 93 Ky. 510, 20 S. W. 605, 14 Ky. Law Rep. 628; Kelly v. Kelly, 183 Ky. 172, 209 S. W. 335; Hertel v. Hertel, 202 Ky. 422, 259 S. W. 1025; Beatty v. Beatty, 151 Ky. 547, 152 S. W. 540, in each of which stronger proof than here was held insufficient.

We conclude, therefore, that the evidence in this case is insufficient to sustain the charge of such lewd and lascivious conduct upon the part of appellant as proves her to be unchaste, and, therefore, insufficient to authorize the chancellor to award appellee a divorce, but, as hereinbefore suggested, we have no jurisdiction of that question, and no power to review the judgment.

Appellant is the only witness who speaks concerning appellee's treatment of her. Without recounting it, it is sufficient to say that, if true, she was subjected to treatment more cruel and degrading than beatings. But, in the absence of the slightest corroborative circumstances, and in view of appellee's denial of it, we must hold it insufficient to authorize a divorce a vinculo on her counterclaim; but, since appellee was not entitled to a divorce,

appellant, who has no property of her own, was entitled to alimony, regardless of whether she proved a right in herself to a divorce. Yeager v. Yeager, 197 Ky. 353, 247 S. W. 5; Green v. Green, 152 Ky. 486, 153 S. W. 775.

There is very little testimony concerning the value of appellee's property holdings, although it is shown that he has considerable property. It is, however, shown that from a certain hotel property he has an income of $1,000 a month, less taxes, insurance, upkeep, and depreciation; and that he has a salary of $3,000 per annum as president of the water company. It has been frequently held by this court that in fixing the amount of alimony consideration should be given the value of the husband's estate, his income, earning capacity, age, condition of health, ability to labor, and the age, condition of health, and station of the wife, the particular cause of the divorce, and the relative responsibility of the parties therefor; and, as to the property holdings, whether the wife helped in any way in the accumulation thereof. Shehan v. Shehan, 152 Ky. 191, 153 S. W. 243; Burns v. Burns, 173 Ky. 105, 190 S. W. 683. Appellee was 48 or 49 years of age, and appellant was between 19 and 20 years of age at the time of the separation. She was young, able-bodied, had worked for her living before her marriage, and had in no way contributed to the accumulation of the property held by appellee. Counsel for appellant insists that she should be allowed at least $25,-000. This is approximately one-third of the value of appellee's property. Cases are cited in support of that contention; but the facts in none of them are like those here. We have concluded that, under the facts and circumstances of this case, appellant is entitled to, and should be allowed, alimony in the sum of $5,000.

Much stress is laid by appellee upon the fact, proven, that at the time of the separation appellant without appellee's knowledge or consent took from his office certain securities of the approximate par value of $30,000, but actually worth much less, which, however, were returned to him; and insists that, on her counterclaim, she does not come into equity with clean hands. That doctrine has no application here, regardless of how reprehensible her conduct, as to that matter, may be. The maxim, considered as a general rule controlling the administration of equitable relief in particular controversies, is confined to misconduct in regard to, or at all events connected with, the matter in litigation, so that it in some measure

affects the equitable relations subsisting between the two parties, and arising out of the transaction. When a court of equity is applied to for relief, it will not go outside of the subject-matter of the controversy, and make its interference to depend upon the character and conduct of the moving party in any way affecting the equitable right which he asserts or the relief which he demands. American Association v. Innis, 109 Ky. 595, 60 S. W. 388, 22 Ky. Law Rep. 1196.

Appellee has prayed a cross-appeal from the judgment allowing appellant's counsel a fee of $750 to be taxed in the costs, and her counsel are parties to that cross-appeal. Considering the size of the record, the question involved, the time consumed in the preparation and trial of this case in the court below and in this court, that fee is not exorbitant, although liberal. But no additional allowance on behalf of her counsel will be made for services in this court.

Wherefore the judgment is affirmed upon the cross-appeal, and reversed upon the original appeal for proceedings consistent with this opinion.