# Hockensmith v. Hockensmith.

May 9, 1941.

Thomas K. Shuff, Jr., for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming in part and reversing in part.

This action was filed by the appellee, C. G. Hockensmith, against his wife, the appellant, Clara Hockensmith, for a divorce on the grounds of cruelty set out in the last two paragraphs of Kentucky Statutes, Section 2117. The appellee counterclaimed, seeking a divorce on the same grounds and also seeking alimony and custody of the parties' two children, a girl 10 years of age and a boy of 8. The chancellor granted appellee a divorce and custody of the children, with a right of visita-

tion on appellant's part, and denied alimony to appellant. Appellee was ordered to pay the cost of the action including an allowance of $100 to appellant's attorney. Appellant appeals from that judgment in so far as it denied her alimony and custody of the children. It is also contended that she should have been allowed a larger attorney's fee.

Appellee is cashier of a bank at Stamping Ground, where the parties reside, and appellant is a well-educated woman, active in the civic life of the community. Appellee's salary is $150 per month and he is the owner of a home valued at approximately $5,500 but his equity in it over and above a mortgage is not more than $1,000. He has little in the way of other property than the household furniture.

The evidence for appellee tends to establish that the appellant, while she is of good moral character and a good housekeeper, is a headstrong, domineering, possessive and jealous-hearted woman. Appellee testified to many incidents illustrating these traits of character on appellant's part and many of these incidents are corroborated by substantial citizens in the community. It would serve no useful purpose to give the details of any of these incidents since no one of them standing alone would be sufficient to sustain the finding that the appellant was guilty of such cruelty as to warrant the granting of a divorce. The sum total of all of the testimony discloses, however, that appellant is a woman of extremely high temper, given to tantrums, and possessive to the point that she would follow appellee to different places in the town in which they lived and address remarks to him tending to humiliate him before the public. On more than one occasion such conduct on her part was carried to the extreme of going to the bank where appellee was employed and creating scenes, culminating on two occasions in acts of violence on her part. At times the altercations between the husband and wife rose to such a point as to culminate in physical violence inflicted by her upon him.

Appellant has rather a plausible explanation as to most of the incidents shown by appellee's testimony and these explanations as a rule place the blame on appellee, himself, as the moving cause of the trouble and, according to her, appellee was usually the one who first resorted to physical violence, but her testimony along this

line is, as a rule, at variance with other apparently reliable testimony introduced by appellee.

Appellant's testimony, corroborated to a certain extent by her mother and sister, is to the effect that appellee was in the habit of drinking excessively and that he was enamored of a young lady who was employed in the bank. Appellant and her mother and sister testified that appellee talked frequently about the young lady in the bank, stating that he was tired of appellant and wanted to get rid of her and that he had a woman in mind who had plenty of money and was going to marry her. They also testified that appellee was rude and violent in his conduct towards appellant, frequently indulging in profanity in the presence of the children.

Appellee admitted that he drank on occasions and in fact took drinks whenever he desired to do so, but it seems to be well established that he was not a man who drank to excess—it appears also that on rare occasions appellant, herself, would take a social drink. The evidence of appellant and the members of her family tending to establish that appellee was unduly attentive to the young lady who worked in the bank is wholly uncorroborated by any outside evidence. On the contrary, a large number of the best citizens in the community testify that the character of the young lady is absolutely above reproach and that no attentions to her upon appellee's part have ever been observed. It may here be remarked that neither the appellant nor her relatives related any incident showing any attention by appellee to the young lady in question—they merely say that he talked about her.

Without going more into detail as to the testimony, we may say that we have given most careful consideration to all the evidence and are of the opinion that it was sufficient to sustain the finding of the chancellor in awarding appellee a divorce and denying alimony to appellant. Mere fits of ill temper and occasional quarreling and scolding by the wife do not justify a husband in abandoning her unless his personal safety is in danger, Kelly v. Kelly, 183 Ky. 172, 209 S. W. 335, but continued acts of criticism, contempt and disrespect are sufficient to sustain a charge of cruel and inhuman treatment. Grove v. Grove, 239 Ky. 32, 39 S. W. (2d) 193. If even one-half of the testimony of appellee, corroborated by other witnesses, is to be believed, appellant was

continuously guilty of acts tending to humiliate the appellee publicly and acts of such character as to destroy permanently his peace and happiness. We have little doubt that the chancellor reached the correct conclusion on this issue.

In regard to the custody of the children, however, a different question is presented. Practically all witnesses on both sides agreed that the appellant was a fit person to have the care and custody of the children and that she made them a good mother. We may exercise our common knowledge which tells us that frequently a woman who is an excellent mother may be an impossible wife. The evidence discloses that the only female in appellee's family who could take charge of the children is his mother who lives in Frankfort, and it is apparent that she is physically unable to take charge of and rear the children. Of course, appellee, without the help of a housekeeper of some kind, could not properly care for them.

It may here be remarked that after the rendition of the judgment by the chancellor, the appellee, apparently recognizing that he was in no position to take permanent charge of the children, filed in the action a pleading by which he suggested that the judgment be modified to the extent of giving him legal custody of the children but permitting appellant to have them with her from September to June of each year, subject to his right to have them on week-ends and holidays, that is, for appellant to have them during the school months and for him to have them during the other three months of the year and for him to pay to appellant $40 per month for their support and maintenance and also provide clothing and pay all necessary medical bills. He also agreed to give appellant one-half of the furniture and household goods to be selected by him.

Appellant responded to this pleading with a proposition that she be given the custody of the children during the school months with the right upon appellee's part to have them during the Thanksgiving and Christmas holidays and at any other times agreeable to the parties, but that the appellee should pay $60 per month for their support and maintenance in addition to providing their clothing and paying any medical bills.

Since the appellee is apparently in no position to have permanent custody of the children and since he rec-

ognizes the fitness of appellant to have their custody, we have reached the conclusion that the chancellor as to this phase of the case should have entered a judgment in substance as follows: appellant to have custody of the children from September 1 to June 1, inclusive, with the right on the part of appellee to have them on week-ends and holidays; during the summer months appellee to have custody of them, with the right of visitation on the part of appellant; during the time appellant has custody of the children appellee should pay her $50 per month for their support and maintenance, including clothing, and should pay for any necessary medical attention. The judgment will also provide that appellee shall give to the appellant one-half of the furniture and household goods to be selected by him in accord with the offer made in his pleading.

The case was diligently and ably practiced by appellee's attorney, and in the ordinary case the allowance of only $100 as attorney's fees would be inadequate but, considering the financial condition of appellee and the fact that the record was voluminous, necessitating the payment of large costs, and having in mind that appellee must compensate his own attorney, we conclude that the amount of the fee as fixed by the chancellor should not be increased.

The judgment is affirmed in part and reversed in part, with directions to enter a judgment in conformity with this opinion.