## Maher v. Maher.

May 25, 1943.

M. J. Hennessey for appellant.

King Swope for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

In April, 1941, appellee instituted suit against appellant for divorce, charging cruel and inhuman treatment, being ground (3) (b) of KRS 403.020. By amendment she added grounds set out in (3)(c) of the same section, such injury or attempt at injury as to put the wife in fear of injury or harm from "remaining with him." She also set up the financial status of the husband, asking for alimony in a lump sum of $1,000 and a monthly allowance of $150. Appellant denied the allegations of the petition in respect of both charges, and as to his financial status.

The case was referred to the master commissioner for proof and report. Following the taking of about 500 pages of depositions, he filed a comprehensive report, touching upon all issues, concluding with a recommendation that plaintiff be granted absolute divorce, and that the husband should pay $3,500 alimony. He recommended an allowance of $500 as a reasonable fee for the wife's counsel, this to be paid by the husband. To so much of the report as made recommendation for alimony and counsel fee, appellant excepted; likewise to recommendation of absolute divorce. The wife moved for confirmation of the report. Upon submission the chancellor adjudged the wife an absolute divorce, approved the allowance of counsel fees, but reduced the suggested allowance for alimony to $2,500. Appellant excepted to the judgment in its entirety; appellee to so much as reduced the alimony allowance; she is not here on cross appeal.

At the outset we are met with the contention of appellee that the question of allowance for counsel fee cannot be now considered by this court since counsel is not made a party, citing King v. King, 214 Ky. 171, 283 S. W. 73, and other cases which hold that where the al-

lowance is made directly to counsel, it is necessary if question be raised here, that the attorney be made party.

Counsel for appellant contends that the rule is neither controlling nor applicable, since appellant was not entitled to allowance of any sum for legal services, because she was not free from fault, and had ample estate to pay for legal services. Since it appears that the allowance was to the wife with right of execution in her, we shall consider the question from the standpoint of appellant. The argument is based on the ground that the evidence did not show directly or by circumstance that appellant was guilty of any cruel or inhuman treatment, it being the theory of appellant that the wife merely became dissatisfied because the husband failed to carry out an agreement to purchase a part of his brother's farm, in which it seems she was to put some money and take joint title, and under such circumstance abandoned his home. This coupled at all times, both as to alimony and allowance with the assertion that she had ample property of her own.

Counsel fully recognizes the rule that we cannot on appeal disturb the finding of the chancellor in granting divorce, except in certain cases of fraud or want of jurisdiction, and correctly contends that we may look to the facts when there be questions of allowance of alimony or costs, to ascertain if they be such as to not justify the allowance or imposition. Land v. Land, 280 Ky. 122, 132 S. W. (2d) 742. Before taking up the facts it may be proper to observe the law on the subjects to be discussed. The statute providing for allowance of costs, which has been held to include counsel fees reads:

> "In actions for alimony and divorce, the husband shall pay the costs of each party, unless it appears in the action that the wife is in fault and has ample estate to pay the costs." KRS 453.120.

In giving construction to the statute in no few cases, we have consistently held that the two conditions must exist or concur, in order to relieve the husband from payment. Robb v. Robb, 281 Ky. 729, 137 S. W. (2d) 385, and cited cases. In Ratliff v. Ratliff, 193 Ky. 708, 237 S. W. 397, 401, citing Wills v. Wills, 168 Ky. 35, 181 S. W. 619, quoting from Honaker v. Honaker, 182 Ky. 38, 206 S. W. 12, we said:

> "As the wife in this case was not shown to have

been in fault, although she had ample estate, the husband must pay her costs, including a reasonable attorney's fee."

In Hartkeimer v. Hartkeimer, 248 Ky. 803, 59 S. W. (2d) 1014, 1016, after quoting the statute supra, we said:

"It is true that appellee had some estate, but it not appearing that she is at fault, appellant must pay all costs, including attorneys' fees."

The allowance of alimony is not controlled by statute; it is provided (KRS 403.060) that if the wife has not sufficient estate of her own, she may on being granted divorce, have such allowance from the estate of the husband as to the court appears equitable. What is deemed "equitable" is a matter for the consideration of the trial court based on the facts. It is well recognized that it is the duty and obligation of the husband to maintain the wife even after cessation of the marriage relation, if he was the cause of the severance. In reaching the proper measure it is deemed equitable to regard the present value of the husband's property, his income, age and ability to work, and his expectancy of additional estate, as well as the social position and earning capacity of both husband and wife, and conduct which the parties have exhibited towards each other. Lewis v. Lewis, 289 Ky. 615, 159 S. W. (2d) 995; Sabel v. Sabel, 286 Ky. 575, 151 S. W. (2d) 56; Dodd v. Dodd, 278 Ky. 662, 129 S. W. (2d) 166.

As to what part the fault or like fault of the wife enters into the allowance seems to be fairly well settled in this jurisdiction. In the case of Moore v. Moore, 231 Ky. 829, 22 S. W. (2d) 251, we held that the wife is entitled to alimony as a matter of course, unless it appear from the proof that she was solely at fault or guilty of such moral delinquency as to forfeit her right to alimony. In Hartley v. Hartley, 255 Ky. 370, 74 S. W. (2d) 195, we adhered to the rule, using the word "wholly." In the recent case of Bordes v. Bordes, 272 Ky. 183, 113 S. W. (2d) 1122, we reviewed the cases cited above and others touching the subject, and adhered to the rule. The cases cited by appellant, Taylor v. Taylor, 273 Ky. 802, 117 S. W. (2d) 983, and others are cases wherein we found the wife to be wholly or equally at fault and not entitled to alimony. It follows that the determination of the chancellor in fixing alimony de-

pends upon the facts and elements which we have named above.

When we consider the proof in the case, which we shall do briefly, we find existing an unfortunate situation. It may be gathered from the evidence that the marriage was not founded entirely on mutual affection; that appellee was interested in securing a suitable home for herself, and the husband someone to care for the home in which he and a brother lived on a farm in Mason County. As to how long the courtship was carried on is not made plain. The appellee lived in Fayette County with her father and others of the family. It appears that there was a previous agreement that Mr. Maher was to dispose of his interests, or a part thereof, in Mason County, and the wife supplementing the proceeds with the surrender value of a life policy, the whole sum was to be invested in a Fayette County farm, the title to be joint in fee with remainder to the survivor.

This arrangement was attempted to be carried out prior to marriage, but due to matters relating to a settlement of the estate of Mr. Maher's mother the plan failed. The failure temporarily broke up the plan. Later on, just before the day of marriage, appellee called appellant to meet her in Lexington, which he did. Some trouble had arisen in appellee's home; she suggested willingness to marry, still carrying in mind some arrangement for the purchase of a farm jointly, which should be carried out by March 1st of the next year, the idea then being to purchase the interest of appellant's brother Martin in the farm property.

They were married July 28, 1940; at the time appellant was about 53 years of age, appellee about thirteen years younger. Following the marriage appellee went to the home in Mason County, and at once entered vigorously into the duties of housekeeper, and looking after matters connected with the operation of the farm. It was not long before it developed that the parties were unsuited to a happy married life. The purchase of a farm, or of Martin's interest was the subject of much discussion, apparently with a willingness on the part of appellant to carry out the plan.

The wife testified that a feeling arose less than two weeks after the marriage ceremony, when she says the husband showed signs of being dissatisfied with their

married life. Three weeks after their marriage appellant suggested that appellee should request her father to advance to her such part of his estate as might be coming to her on his death. This upset the wife, though it is not impossible that the request was made so that the joint purchase of land might have been consummated. However, she thought that such a request of her father would have been ridiculous and futile.

The wife testifies that during the seven months of married life the husband gave her little or no money; that when it was asked for it was given in such a way as to be discouraging; in a manner that indicated he cared nothing for her or her wants. She complained that while her husband had a sizeable bank balance he would not permit her to draw checks. He bought her no clothing. The husband, in a manner, excuses himself by saying that she did not ask for, and was not in need of funds. He also admitted that he bought her little or no clothing, because she had ample and was always well dressed. She says she only had three dresses. Appellant did not allow her to establish credit at stores; she paid for gasoline; paid for her dental work, the husband suggesting that he had told her to buy certain things at stores or places, where it seems there was no credit allowed. She says he took her to no sort of entertainment; that she asked him to take her to picture shows, but he refused. He excused himself by saying she made no request to go places of entertainment, though admitting that prior to marriage they had attended shows occasionally. His idea was that both had to forego luxuries so as to enable them to purchase the farm. Only on one occasion did he take her out socially, beyond visits to his people, though he insists she did not evince a desire to do much or any visiting. She used her own car and bought gasoline, though there were two other cars on the place; she paid for her car license and insurance premiums.

There was objection to her use of the telephone in distance calling, at one time appellant forcefully attempting to prevent her from making a night call. The home was, outside of the kitchen, scantily furnished. The husband refused to permit the wife to bring her furniture, the excuse being that he wanted to wait until the purchase of another farm, and that he had enough furniture, though it seems to have consisted of a few beds and chairs, minus rugs or draperies. The wife also

complained that the hired man was allowed by the husband to come into her room, where there was a fire, before she had arisen, and put on his shoes and socks; she complained and the husband said that the man had the right to come in the room and finish his dressing. The husband admits that this happened one morning when it was cold.

In addition to these specific charges, it was claimed by the wife that the husband was of violent temper, manifested on an average of once or twice each week. As an example he would come to her room raving, sometimes chewing and smoking, spitting on the grate, cursing and swearing. He would jump up and down on the floor and throw things around, beating his clothing against the walls. His own witnesses said that he had nervous angry spells. The husband admitted that he was accustomed to the use of liquor, but it is not claimed or shown that he was an addict. Appellant admits that appellee was a good and energetic housekeeper.

There are other charges made by the wife which are denominated examples of extreme, exceptional cruelty (one accompanied by a threat of personal violence) which we do not choose to relate in detail. Two of these were vehemently denied by appellant; a third meeting with a partial admission, though laying the grounds for the treatment on the wife. One of these appears, according to the wife, to have been the occasion of the breaking point; the determination on the part of the wife that she could no longer live in the home as a wife, and resulting in her seeking a home elsewhere. This was some time in March 1941. The husband insists that this was an abandonment of his home, without fault on his part, the idea being, as we gather from his proof, and the brief filed in his behalf, that the wife left because he was dilatory in meeting the arrangement for the purchase of another farm, which contention the chancellor no doubt took into consideration.

Under the facts as related there can be no doubt but that the chancellor properly granted divorce to the wife. It is hardly necessary to cite cases in which we have outlined the quantum or character of proof necessary to entitle the wife to divorce under the cruel treatment statute. References may be had to Burns v. Burns, 173 Ky. 105, 190 S. W. 683; McClintock v. McClintock, 147 Ky. 409, 144 S. W. 68, 39 L. R. A., N. S., 1127; Hocken-

smith v. Hockensmith, 286 Ky. 448, 151 S. W. (2d) 37; Dayton v. Dayton, 290 Ky. 418, 161 S. W. (2d) 618; Lewis v. Lewis, 289 Ky. 615, 159 S. W. (2d) 995 is peculiarly fitting.

Counsel complains that the evidence of appellee was not corroborated. It is true that she alone testified as to the alleged acts which showed settled aversion. Her only other witness was her father, who testified that when she came home, after living with appellant for seven months, although she had theretofore been a strong healthy woman, she was in poor physical and mental condition, as both say, "almost a nervous wreck." It is argued that the divorce should not have been granted without corroboration, pointing to sec. 2119, Ky. Statutes, KRS 403.030, which in substance provides that a petition for divorce shall not be taken as confessed or sustained by confessions of the defendant alone. Certain charges named in one section must be sustained, at least by one witness and strong corroborating circumstances.

The charges here do not fall into that class. It is true that in some cases we have held non-corroborated proof not to justify absolute divorce, but divorce mensa et thoro. Miller v. Miller, 229 Ky. 436, 17 S. W. (2d) 412; Yeary v. Yeary, 233 Ky. 691, 26 S. W. (2d) 536, but this does not absolve the husband from liability for alimony, regardless of whether or not the wife sufficiently substantiated her ground for absolute divorce. Miller and Bordes cases, supra. Here the wife was sufficiently corroborated by the admissions (with avoidances) on the part of the husband, in no sense a willing witness, and there is no indication of collusion. Green v. Green, 224 Ky. 218, 5 S. W. (2d) 1046, is not in point here.

The proof as to property status of the parties shows that the husband is the owner of an undivided fourth interest in 176 acres of land at low estimate worth $130 per acre; he owns an undivided one-half interest in the home farm of 208 acres, at about the same value, the total interest (and there appears to be no encumbrances) would amount to approximately $18,000. He had on hand cash of approximately $2,500, and it is not shown that he owed any debts, nor does there seem to be proof as to values of stock or farm equipment. Aside from our estimate it is admitted in supplemental brief, that

after paying expenses incident to the divorce action, his net estate is about $15,000.

It is claimed that appellant, by reason of a rupture, is unfitted for work, but there is proof that he has been and is an active farmer. The wife, it is said by appellant, has an estate of approximately $9,000, is a trained nurse and capable of making wages more than sufficient to provide her with livelihood. She says her brief experience on the matrimonial sea brought her to such condition that she is unable to follow her usual avocation or do any work for which she is fitted. It was shown that she had a twenty-one year endowment policy maturing in seven years. It had a surrender value of $3,300; she had in cash $1,915; her yearly premiums amounted to $256.60,which in seven years would absorb the greater part of her cash. She had a $1,200 note, which was not negotiable; it was her sister's note for which appellee had advanced money to complete the sister's education, and payable only when the sister should come into her portion of the father's estate. She had an automobile of old vintage for which she paid $400 in 1938, and at the time of little or no marketable value. She also had some antique furniture upon which she carried insurance of $3,000, because of the extremely cheap rate, but is of little saleable value, unless refinished.

It would be out of the question to require appellee to surrender her insurance, which she has acquired, perhaps, to aid her in years when she is unable to carry on her life work. We have held that neither the statute nor the reasonable application of the law contemplates that no allowance shall be made to the wife out of the husband's estate if the wife is able to maintain herself by consuming her principal and here appellee is not shown to have any income. McAllister v. McAllister, 1 Ky. Op. 333.

Without prolonging this opinion we have concluded, after giving close consideration to the proof, that the chancellor was fully justified in fixing the alimony as stated. The fact that he reduced the suggested amount by $1,000 indicates that he was careful in the exercise of the discretion vested in him in such matters. As to the allowance to the wife for benefit of counsel, the chancellor no doubt took into consideration the husband's

ability to pay, the character, quality and extent of services rendered by counsel.

While the case was in no sense one which might be characterized as complicated, there must have been expended some considerable time and effort in its conduct, particularly in the taking of proof, which covered more than 450 pages, some taken in Lexington (home of appellee's counsel), but the greater part in Mason County. The chancellor was no doubt well aware of the scale of fees for such services and the value thereof in his jurisdiction. The determination of the amount of alimony as well as allowance of counsel fees is for the chancellor in the exercise of a sound judicial discretion. Jones v. Jones, 261 Ky. 647, 88 S. W. (2d) 673, and we are authorized on review to disturb his findings only when we conclude that discretion has been abused, or there is more than a doubt as to the correctness of his conclusions, so finding nothing to indicate either, we are compelled to affirm the judgment.

Judge Rees not sitting.