### Fields v. Fields.

November 19, 1946.

Rehearing Denied Jan. 17, 1947.

G. E. Reams and J .B. Wall for appellant.

Astor Hogg for appellee.

Opinion of the Court by Van Sant, Commissioner
—Affirming in part, reversing in part.

Appellant filed the action seeking a divorce on the ground of cruel and inhuman treatment, praying alimony in the sum of Twenty-Five Hundred Dollars ($2500); appellee counterclaimed seeking a divorce on the same ground. The Chancellor granted a divorce to both parties, denied alimony, decreed appellee to be the sole owner of the property ·in which the parties lived, each to be the owner of an undivided one-half interest in five lots designated "the garden property," appellant to be the sole owner of the household furniture, adjudged costs against appellee, but decreed each should pay his and her attorney's fee.

Appellant has appealed from so much of the judgment as denied her alimony, required her to convey her one-half undivided interest in the home property, and decreed she should pay her attorney's fee. Appellee has not cross-appealed. Appellant's asserted right to recover alimony depends upon the correctness of her contention that she was entitled to a decree of absolute divorce, and that her husband was not. This contention calls for a brief resume of the evidence.

Appellant testified that appellee failed to contribute to her support or that of their home for the last seven years preceding the filing of this action. For that period of time she worked for a doctor, a restaurant, a bakery, and a laundry; from her earnings she maintained herself, the home, and part of the time the appellee. For more than twelve months next before the filing of the petition, he frequently called her "old whore," "old bitch," and "old heifer"; he told her that she had him on her hands and had to keep him up. Three days before their separation, he tried to break her arm and took One Hundred Dollars from her; he later told her, "I tried to break your arm, and I will break it." Appellant's sister, who lived with the parties, corroborated her in every respect. Three neighbors testified that appellant is industrious, quiet, a good housekeeper, remained at her home when not working, and took a great deal of interest in her home.

Appellee testified that he did not curse his wife, strike her, "try to break her arm," or take One Hundred

Dollars from her; however, on cross-examination, he admitted he held her by the arm, and "I think I remember there was $2.00 in the pocketbook and she wanted that." He testified disparagingly of her endeavors at outside work and her ability to earn money with which to maintain the home, despite the fact she proved by the introduction of withholding tax receipts she earned Nine Hundred Seventy Dollars and Eighty-Eight Cents ($970.88) in the employ of a bakery in the year 1945. Typical of his testimony in this respect is the following: "She worked at the bakery part of the time, getting low wages for it." He intimated that he is a devout Christian. He testified that appellant cursed, threw things at him, threw and broke dishes on the floor, displayed a violent temper, once (in the spring of 1931) cut him with a knife, and on another occasion hit him with a piece of stovewood. He complained that she did not go to church; he said:

"When we first got married she belonged to the church, and I thought she was good. She quit going to church and went to cursing. * * * She was awfully bad to curse. One evening I went somewhere, I forget where, and when I came back she had the door shut and when I went in she hit me with a piece of stovewood. She got worse and worse. She would get so bad cursing, I would go out and try to pray and she would call to me."

Whilst proof that a spouse does not attend church is totally irrelevant in actions of this character, appellant explained that she could not attend, because she had to work at the bakery and at home on Sundays; and one of her neighbors testified appellant did her household washing on Sundays. Appellee proved he worked away from home in each of the years 1942, 1943, and 1944. The only testimony concerning his previous earnings is that of appellant, who testified that all he did was to work three or four days a week for the W.P.A. He has not worked since the year 1944, except a short while for the City; the action was instituted in January, 1946, and was precipitated when appellee permanently left his home, saying, "I am going to Kingsport to work." No witness corroborated appellee in his accusations concerning appellant's conduct toward him—not even appellee's sister, although she and appellant are on

unfriendly terms with each other. Appellee testified that he has been in ill health for several years, and his cousin, a doctor, testified that he was in ill health when he examined him about a year before giving his deposition; both testified that his illness was a nervous trouble, appellee attributing it to appellant's habit of cursing. He was asked the following questions and made the following answers:

"Q. During the time you worked at Lynch, state her attitude toward you? A. She was awfully bad to curse.

"Q. Are you a church member? A. Yes, sir.

"Q. Did her cursing as you have told, disturb you? A. Yes, sir.

"Q. Has it affected your health? A. Yes, sir, wrecked my nerves."

At the time of their marriage, appellee was the owner of the home place, which at the time of the trial was appraised by one witness at Two Thousand Dollars ($2,000), by another at Twenty-One Hundred Dollars ($2,100). In January, 1934, he deeded an undivided one-half interest to his wife, according to his testimony "to get her to behave herself," but which appellant testified was in consideration of the payment by her to him of Four Hundred Dollars ($400) in cash. He does not deny that she bought all the furniture which was adjudged to her by the Chancellor. She testified that she paid more than half of the Thousand Dollars they paid for "the garden property." In denying this fact, his testimony is extremely vague and unsatisfactory. The property was bought on time and payments made at the rate of Twenty-Five Dollars per month, except the last payment in the amount of Seventy-Seven Dollars and Fifty Cents ($77.50). He claims to have paid for all of this property out of his earnings when he was working at Lynch, Kentucky; but the record shows that, after he ceased working at Lynch, approximately Three Hundred Dollars was paid on the purchase price of the property, and appellant testified that she made these payments and previously made others out of her own earnings. Undoubtedly, the record supports her in this controverted issue.

The testimony of both of the parties cannot be reconciled; one of them has not told the truth. In order to determine the true facts, we must look to corroborating testimony and circumstances, if they can be found. Although appellant's sister must be considered an interested witness, she corroborated appellant's testimony in every respect, and, having lived with them for several years, is the one person who was in position to observe the conduct of the parties toward each other. But the evidence which is most convincing of the verity of the testimony of appellant, and of the lack of verity of the testimony of appellee, is contained in the exhibits filed as evidence in rebuttal. Appellant testified that she made all the payments on the garden property in the year 1945 out of her earnings for that year. Appellee testified that he made these payments out of the wages he earned at Lynch; he additionally testified that his wife worked most of 1945, but earned only Three or Four Dollars a week, thus intimating that appellant had not earned sufficient money in that time with which to make the payments she claims. After both parties had testified on this particular issue, appellant was able to, and did, produce withholding tax receipts showing her earnings for the year to have been approximately One Thousand Dollars. It was likewise shown that appellee's entire earnings for the year 1945 amounted to the sum of Two Hundred Thirty Dollars ($230), including his last pay check at Lynch which was received in January, 1945, for work done in December, 1944. From this evidence it is not difficult to conclude that appellant testified to the true facts, and appellee did not, in respect to this particular issue. Our conclusion in respect to this matter inclines our minds to give greater weight to appellant's testimony concerning all the issues, and compels us to conclude that the Chancellor correctly granted appellant a divorce, and erroneously granted one to appellee. We have no power to reverse the judgment granting appellee a divorce. But when one is erroneously granted, the error may be considered in a determination of the correctness of the chancellor's judgment in respect to alimony. KRS 21.060; Rayburn v. Rayburn, 300 Ky. 209, 187 S. W. 2d 804. Where the wife has proved her ground for divorce and is not in fault, she is entitled to alimony as a matter of law. Maher

v. Maher, 295 Ky. 263, 174 S. W. 2d 289. It was shown that appellee's separate estate, consisting of United States Government Bonds, one-half interest in the home place, and one-half interest in the garden property, amounts to the approximate sum of Twenty-One Hundred Dollars ($2100). He accumulated this property, with the exception of his interest in the home, after his marriage to appellant, and her earnings relieved him of the necessity of spending these savings for current household obligations. In view of appellee's condition of health, we are inclined to reduce the award of alimony below the amount we otherwise would direct. It is our opinion the Court should have, and on return of the case he will, award appellant the sum of Five Hundred Dollars ($500) as alimony. The Chancellor likewise will set aside that part of the judgment which requires appellant to deed to appellee her undivided one-half interest in the home property, and will enter an order declaring each of the parties to be the owner of an undivided one-half interest therein. Appellant's attorney fee will be taxed as costs against appellee, Maher v. Maher, supra. The judgment, in so far as it declares appellant to be the owner of an undivided one-half interest in the garden property and to be the sole owner of the household furniture, will not be disturbed.

The judgment is reversed, with directions that another be entered in conformity with this opinion.