## WHEELER v. WHEELER
(two cases).

Court of Appeals of Kentucky.
April 17, 1951.

Woodward, Hobson & Fulton, Harry L. Hargadon, Louisville, for appellant.

Gilbert Burnett, Louisville, for appellee.

VAN SANT, Commissioner.

Appellant and appellee were first married in 1928 and divorced in 1943. In that divorce action the property rights were settled by agreement, appellee receiving $3,000 in cash and agreeing to convey to appellant legal title to real estate which had been deeded to them jointly. Following the divorce, appellee joined the Wacs where she served for two and one-half years in World War II. In November, 1945, appellant was injured in an automobile accident. At the suggestion of his sister, appellee was notified of the accident. She immediately joined appellant and nursed him through that illness. The accident occurred in Indiana, and after recuperating for several weeks under his former wife's care, he was transferred to St. Joseph's Hospital in Louisville where she continued to nurse him. After being discharged from St. Joseph's, she nursed him at his home in Louisville with the assistance of a Miss Miller. Whilst the couple were properly chaperoned by Miss Miller and appellant's mother, appellee nevertheless felt that she and appellant should no longer continue to live in the same home unless they remarried, which they did on the 14th of March, 1946. Two or three weeks after they were remarried, appellant, who apparently is addicted to the excessive use of alcoholic beverages, returned to his home in an intoxicated condition. He struck his wife with a crutch, cutting a gash in her head, and otherwise abused her. She immediately left Louisville and obtained a position of employment in Maine. She later obtained a position in Boston where she remained until March, 1947. The parties effected a reconciliation in Boston and returned to Louisville in April of 1947. They lived together, apparently without trouble, until December of that year when appellant commenced drinking again. While under the influence of liquor, he was irritable and difficult to get along with. In the month of July, in a fit of temper, he slapped appellee but immediately apologized. In September, 1948, the parties attended the State Fair where appellant commenced drinking. When they returned home, appellant struck her with a coat hanger, threw her on a bed, and choked her. She left their home that night; and, shortly thereafter instituted this action for divorce on the ground of cruel and inhuman treatment.

There is no testimony in the record in criticism of the character or conduct of appellee, except that she left home on the occasions above mentioned. The Trial Commissioner was of the opinion that she was not justified in leaving home and recommended that judgment of divorce be entered in favor of the husband. Exceptions to the Commissioner's report and recommendations were sustained, and the Chancellor entered judgment in favor of appellee.

█ We are of opinion the Chancellor correctly determined that appellee was justified in taking leave of her husband's abode, and that appellant's conduct toward his wife furnished grounds for the Chan-

cellor's conclusion that she was entitled to a divorce. That being true, appellee was entitled to alimony as a matter of law. Fields v. Fields, 303 Ky. 624, 198 S.W.2d 298.

There remains for our determination, however, the various questions raised in respect to all financial matters covered by both judgments appealed from, the first of which awarded appellee permanent alimony in the sum of $21,000; temporary alimony pending appeal in the sum of $175 per month; recovery of $1,800 furnished appellant during his illness; an attorney's fee of $1,500; and her costs. The second judgment dismissed appellant's motion for allowance as credits on the award for permanent alimony such sums as appellant has been and will be required to pay under the award for temporary alimony pending appeal.

■ Appellant introduced one real estate dealer, appellee two, who testified as to the values of the several parcels of real estate owned by appellant at the time of the trial. The total value of all the real property was appraised by appellant's witness at approximately $45,000, by appellee's witnesses at approximately $63,000. Appellant testified on the trial that two or three years previous to that time, he had executed a mortgage on some of the property to secure a loan of $7,000, the unpaid balance of which with accumulated interest amounted to the sum total of the original obligation. This evidence was not contradicted. Previous to the divorce action appellant received $125 per month rental for the downstairs apartment of the residence he and appellee occupied. The occupants, witnesses for appellee, vacated the apartment, and it remained unoccupied until judgment was entered. Throughout this period of time, appellant was contending, and now contends, that his income was and has been reduced to such an extent that an otherwise fair award of alimony would and will destroy him financially. Yet it is common knowledge that housing conditions in Louisville are such that an apartment of that kind is in such great demand that appellant must be deemed to have been attempting to reduce his income for the purpose of depreciating his ability to pay an adequate award of alimony. This fact is further substantiated by his testimony that the ten horses he maintained in his riding academy were worth but $10.00 per head, in contradiction of other evidence and the Chancellor's finding that they were worth twenty times that amount. The appraisal adopted by the Chancellor is the highest value that could be placed on the property under the most favorable conditions. Since the Chancellor did not take into consideration the indebtedness chargeable to the real estate and since he accepted the highest appraisal possible, we are of the opinion that the award of alimony is excessive and that it should be reduced to $15,000. We likewise are of the opinion that all amounts paid under the allowance for temporary alimony, both before and after judgment, should be allowed as a credit on the award of permanent alimony. We are not disposed to disturb the Chancellor's finding in respect to the judgment in the sum of $1,800 for money advanced to appellant by appellee; the evidence shows appellee had advanced approximately $2,800 on this account during appellant's illness and before the parties were remarried. Nor do we think $1,500 is excessive as an allowance for an attorney's fee, to be taxed as costs in the action.

■ In the first judgment appealed from the court failed to specifically require appellee to convey certain properties described in appellant's answer, the legal titles to which repose in the names of the parties jointly. These properties were conveyed to appellee during and in consideration of the marriage. The court should have specifically required her to execute deeds to appellant in accordance with the prayer contained in the answer. Asher v. Asher, 252 Ky. 664, 68 S.W.2d 32. On return of the case, the judgment will be modified to this extent.

Wherefore, both judgments are reversed with directions that another be entered to conform to this opinion.