## OLDHAM v. OLDHAM.

Court of Appeals of Kentucky.
June 12, 1953.

Henry H. Bramblet, Mt. Sterling, Jesse K. Lewis, Lexington, Rodney Haggard, Winchester, for appellant.

William C. Clay, Jr., Mt. Sterling, for appellee.

SIMS, Chief Justice.

In 1950 appellee, John Oldham, instituted this action for divorce on the ground of cruel and inhuman treatment. The answer of the wife was a general denial followed by a counterclaim asking a divorce on the same ground, an allowance pendente lite of $250 per month, alimony in the lump sum of $15,000, her court costs and attorney's fee. A large amount of proof was taken and the chancellor allowed the wife $75 per month maintenance during the action, granted her an absolute divorce, alimony in the lump sum of $2,250, $750 attorney's fee and gave her all the household furnishings in the home of the parties. The wife appeals from that part of the judgment allowing her alimony only in the sum of $2,250, and the husband cross-appeals, insisting the alimony allowance is excessive.

After a prolonged courtship of eight or nine years, the parties married in 1946, when the wife was 26 and the husband 38 years of age. They started housekeeping in a small apartment over a poolroom which the husband operated in Mt. Sterling, and the wife, in addition to keeping house, worked as a seamstress at the Enoch Manufacturing Company where she earned from $20 to $25 per week on piece work. No children were born to the couple and their four years of married life were turbulent from the beginning. No one can read this rather voluminous record without arriving at the conclusion that the husband failed to have the proper conception of womanhood, and of the marital status. He drank excessively, gambled in the same manner, stayed out late at night and sometimes stayed out all night, neglected his

wife·and·embarrassed her by his words and conduct in public.

She testified that he struck and kicked her and threatened her life. Oldham's counsel argues the husband denied mistreating his wife, and there is no evidence corroborating her and the record shows her conduct is "a smear campaign" against her husband. True, some of her testimony as to his choking, beating and kicking her is not corroborated by third parties—such happenings seldom occur before outsiders—but a fair mind reading the testimony of both parties has no difficulty in believing the wife. Evidently the chancellor did, else he would not have granted the divorce to the wife in view of her testimony that she became so exasperated at her husband as to hit him over the head, kick the windshield out of his car, knock the glass out of the back door of his poolroom, and to break up many articles of household furniture on three occasions.

The record contains so many unsavory words and such uncouth conduct, to put it mildly, upon the part of the husband, that we will not specifically refer thereto. It will suffice to say the evidence abundantly supports the chancellor's finding in granting the divorce to the wife. As she is shown to have no property and a very meager earning capacity, she is entitled to alimony as a matter of law when granted the divorce. Fields v. Fields, 303 Ky. 624, 198 S.W.2d 298.

The husband admits his income is slightly in excess of $1,800 per year and his net estate is worth $24,000, while his wife puts both in excess of these sums. He owns a half interest each in a poolroom and a liquor dispensary in Mt. Sterling, and some farm lands and has accumulated property of the value of at least $24,000. It is difficult to see how he could indulge himself in a new and expensive car each year and live·in the manner as shown in this record on an income of $1,800 a year. But taking his annual income at $1,800 and his net worth at $24,000, we think the ·chancellor's allowance of lump-sum alimony of $2,250 is too small. There is no fixed standard for determining the amount of alimony, which largely rests· in the sound discretion of the chancellor. Various circumstances are considered in arriving at it: the size of the husband's estate, his income and earning capacity, his age and ability to work, the wife's situation in life, her earning power and health, the cause of the divorce and each party's contribution thereto. Shehan v. Shehan, 152 Ky. 191, 153 S.W. 243; Ahrens v. Ahrens, 313 Ky. 55, 230 S.W.2d 73, 74. Ordinarily, the wife is allowed approximately one-third of the husband's net estate, but in the circumstances and under the facts presented by this record, we think a fourth, or $6,000, is a fair sum to allow Mrs. Oldham.

Counsel for the wife are mistaken in their contention that the amount paid her pendente lite should not be credited on the lump-sum alimony. Wheeler v. Wheeler, Ky., 238 S.W.2d 1001. The $6,000 credited by the $1,050 paid Mrs. Oldham pendente lite will reduce her lump-sum alimony to $4,950. The husband's counsel is in error when he construes Maynard v. Maynard, 311 Ky. 390, 224 S.W.2d 158, as holding that the wife is not entitled to alimony from the real estate owned by the husband and in arriving at the net estate from which alimony is to be allowed, the value of the real estate must be deducted. The Maynard opinion holds that under KRS 403.060(1) an alimony allowance shall not divest the husband of fee-simple title to real estate; but it does not hold that in arriving at the husband's net estate for the purpose of allowing alimony his real property shall not be taken into consideration.

The husband insists he is entitled to credit on the alimony in the sum of $1,950 which he says is the value of the household furniture. He gave his wife only $20 per week on which to run the house and was parsimonious with her, only giving her $100 occasionally, and she testified she bought practically all the household effects with her own earnings. Therefore, he is not entitled to this credit.

The judgment is reversed on the appeal and the chancellor is directed to enter one allowing the wife $4,950 lump-sum alimony. The judgment is affirmed on the cross-appeal.