**Clark NALL, Appellant,**

**v.**

**Lorene NALL, Appellee.**

Court of Appeals of Kentucky.

Sept. 30, 1955.

Earl F. Martin, Hartford, for appellant.

Woodward, Bartlett & Catinna, Hartford, for appellee.

MOREMEN, Judge.

Appellant, Clark Nall, has appealed from a judgment which granted to his wife, Lorene Nall, a lump sum alimony in the amount of $3,500, reimbursement for doctors' and medical bills in the sum of $222.-35, and an allowance to her attorneys in the sum of $500. The attorneys were not made parties to this appeal and, therefore, the question of the amount of their fee is not before the court.

On this appeal appellant argues (1) that there is no evidence to support the judgment; (2) that appellant should have been granted a divorce on his counter-claim; (3) that the award of alimony was excessive; (4) that the supplemental judgment ordering appellant to pay $222.35 as reimbursement to appellee for doctors' and hospital bills paid was erroneous; (5) that the judgment erroneously ordered certain real property to be sold to satisfy the award of alimony.

The parties were married in 1947 and lived in and about Hartford, Ky. on various farms. They seem to have been a working couple and the wife apparently readily joined in manual labor which is not ordinarily done by modern farm women. Appellant has engaged in farming all his life and the last few years of the marriage he dealt in standard bred horses which he trained and raced in harness events at fairs and horse shows. During this period the wife accompanied him on the circuits and also helped him improve various farms for resale. In general they seem to have been happy enough. However, in 1950, the wife became ill and submitted to an almost complete hysterectomy. It was following this time that the marital difficulties arose. Mrs. Nall was sick a good deal of the time and was unable to be as active in the farm work and marital partnership as she had been in the past. In June 1953, upon advice of her physician, she was required to move into a trailer owned by the couple which was placed in the city of Hartford, and there she stayed until their separation on August 28, 1953.

To sustain her charge of cruel and inhuman treatment, Mrs. Nall testified—and she was corroborated in a slight degree by her witnesses—that appellant became irritable and dissatisfied with her after the operation, that he neglected her during her illness, refused to stay with her or pay even slight attention to her during her period of sickness, did not take her to the horse shows, or do any of those things which he customarily had done prior to her operation. He refused to stay with her on many occasions at night but would come home after working hours, get clean clothes, go out and not return for several hours. She said he told her he was tired of married life, that she did not fit into his plans and he intended to get a job as deputy sheriff. Her testimony that she performed manual labor on the farm, such as building fences, sowing seed, milking, gathering corn, tearing down and repairing buildings and raising vegetable gardens, was amply corroborated by other witnesses. It seems that prior to the operation she gladly worked on these occasions. It was only after she became sick that she objected to the strenuous work and she complained because appellant required her to leave a sick couch and help him saw a tree with a crosscut saw.

On the other hand, appellant, in support of his counter-claim—which was based upon a cruel and inhuman treatment allegation and an averment that appellee had an outrageous temper, KRS 403.020(4)(e)—testified that appellee would nag him about small matters and had accused him in public of infidelity without basis for such an accusation. He stated that each time he moved appellee to a new home she would become dissatisfied and require him to move her back near her mother; that on one occasion she actually seized a shotgun and attempted to do him violence before he disarmed her. Appellant, too, is corroborated in part by the testimony of numerous witnesses.

Each party denied the substantial testimony introduced by the other and the chancellor was confronted with a direct conflict in testimony. He elected to accept the testimony offered by appellee and we find no compelling reason why we should substitute our judgment for his.

■ Appellant argues in effect that the only evidence to support the judgment granting appellee a divorce was her uncorroborated testimony of cruel and inhuman treatment which is insufficient to authorize a divorce. In Jones v. Jones, Ky., 246 S.W.2d 583, 584, it was said:

"These provisions of our law do not require the testimony of more than one

witness to establish the existence of any ground relied upon for divorce, except to sustain the charge of adultery or of lewd and lascivious behavior. Maher v. Maher, 295 Ky. 263, 174 S.W.2d 289; and Stibbins v. Stibbins, 1 Metc. 476, 58 Ky. 476."

The chancellor elected to accept the wife's testimony as being true and there is sufficient evidence in this record to support the judgment.

In connection with appellant's contention that he should have been granted a divorce on his counter-claim, it is argued that it is not necessary that the husband show he is without fault or like fault in a claim of cruel and inhuman treatment, whereas it is necessary that the wife plead and prove she is not at like fault in such a case, the inference being that the husband is in an advantageous position in a divorce suit based upon that ground, and reliance is had upon Muth v. Muth, 314 Ky. 531, 236 S.W.2d 469. It was pointed out in Fenner v. Fenner, Ky., 273 S.W.2d 803, that the statement in Muth v. Muth was not necessary to the decision in the case and it was held that recrimination is a complete bar to the right of a party to obtain a divorce.

█ The husband next complains that the alimony award of $3,500 is excessive. The record discloses that at the time of the separation they owned the following property approximately: a farm identified as the Ragland farm of 100 acres; another farm referred to as the Rosine farm of 42 acres; a house trailer purchased in 1951; a 1950 model truck; 30 to 40 head of cattle; 4 standard bred harness horses; and one-third interest in a house located in Hartford, Ky. It is conceded in the brief for appellant that the net value of his estate is $8,070. On the other hand, the appellee in her brief as to the approximate value of the above mentioned items places the estate at $13,600. The appellee is 33 years of age and is sick. She has no training for a vocation and from the testimony of her physician, it is unlikely that she can successfully obtain employment. The ap-

pellant is 43 years of age and except for a fifteen per cent army physical disability, for which he is compensated, he is in good health and from the record the impression is gained that he is a good businessman and well able to make his way in the world. The record indicates the parties placed the following values on the property:

| | Husband's Appraisal | Wife's Appraisal |
|---|---|---|
| Rosine Farm (42 acres) | $3500.00 | $4500.00 |
| Ragland Farm (100 acres) | 2500.00 | 5000.00 |
| House trailer | 500.00 | 500.00 |
| 1950 Truck | 500.00 | 500.00 |
| Standard-bred harness horses | 920.00 | 2600.00 |
| Hogs | ———— | 500.00 |
| ⅓ interest in house and lot | 200.00 | ———— |
| Cattle (30 head) | 1650.00 | (40 head) 6000.00 |
| Total | 9770.00 | 19600.00 |

The trial court did not specifically make a finding as to the value of all the property but it appears that he decided the true value of the property was somewhere between the estimates given by the two parties. Under the circumstances of this case, we believe the award was not excessive.

█ Appellant next complains that the court erred in entering a supplemental judgment by which the alimony award was increased in the sum of $222.35. The events which brought about its entry are these: While suit was pending, appellee moved that the court enter an order and judgment requiring appellant to pay a hospital bill in the sum of $192.35 and a doctor's bill in an amount of approximately $200. Appellant filed a response to this motion in which, among other defenses, it was set out that the persons to whom the various bills were due were indispensable parties to the litigation. It was also pleaded that the court had theretofore entered an order in regard to medical expenses which was in full satisfaction of all such expenses, and that any such indebtedness, having been paid voluntarily by appellee, should not be recovered. It is apparent that appellee filed receipted medical bills with her motion; (however, no copies appear in the record). She testified at the

trial that her medical expenses were about $220. The original judgment which awarded to appellee the sum of $3,500 as a lump sum alimony settlement contained this reservation: "The questions relating to the allowance and amount of plaintiff's attorney fee and plaintiff's claim for hospital and doctor bills and medical expenses are continued and will be determined by future orders of this court, and this action is continued for the aforesaid purpose." About 15 days later the court apparently made up his mind concerning the matters on which he had reserved judgment and rendered his decisions by a supplemental judgment. He was well within his right in so doing. After the case had been submitted he could have reserved all rulings until he had decided all questions, or he was at liberty to decide the main issue and pick up the remnants by a supplemental judgment. The award, although in form of reimbursement for medical expenses, was a part of the lump sum settlement. The persons to whom appellee had made payment were not necessary or proper parties to this suit.

Appellant's final assignment of error arises out of this phase of the case. Simultaneously with the filing of the complaint, a general order of attachment was issued and levied upon property belonging to appellant. Thereafter appellant filed a motion to discharge the attachment, which was overruled and, on this appeal, appellant contends that the affidavit of attachment was defective. He fails to point out in the brief any specific defects. We have examined the verified complaint which contains, we believe, a sufficient statement of facts to justify the issuance of an attachment.

The judgment entered in the case contains this provision: "It is further ordered and adjudged by the court that if the foregoing sum adjudged to plaintiff, including the cost of this action, be not paid within 30 days after the entry of this judgment, plaintiff may apply for a judgment enforcing said attachment lien and directing the sale of said property and the application of proceeds thereof towards or in satisfaction of said judgment." Appellant contends that this part of the judgment violates that part of subsection (1) of KRS 403.060, which reads: "But no such allowance shall divest the husband of the fee simple title to real estate", and relies upon Piersall v. Piersall, 302 Ky. 486, 194 S.W.2d 627, in support of his contention. In that case, however, the trial court directed that the husband's realty be sold and the proceeds of sale divided between the parties which, of course, was a direct divestment of the fee simple title to his property. We are of opinion that the instant case is controlled by the theory announced in those cases in which it has been held that the statute does not prohibit the chancellor from enforcing by execution against the property of the husband a judgment of alimony in favor of the wife. Tyler v. Tyler, 99 Ky. 31, 34 S.W. 898. In commenting upon the Tyler case it was said in Webster v. Webster, 269 Ky. 712, 108 S.W.2d 724, 726: " 'That rule proceeds on the theory that the husband is the debtor of the wife, and being in default, she may enforce the collection of her debt just as any other creditor.' " We have some doubt as to whether or not this question is before us at this time because the provision is merely permissive and permits appellee to seek a judgment enforcing the attachment lien in the future if the situation warrants it. However, it is our opinion that the provision was proper.

Judgment affirmed.