## Jones v. Jones.
(Decided Dec. 11, 1935.)

648

HARPER & GOAD, A. J. OLIVER, RODES K. MYERS and W. R. GARDNER for appellant.

BAIRD & GARNETT and RODES & HARLIN for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

Mrs. Eulah Jones instituted this action for divorce and alimony against George H. Jones alleging in her petition that for 6 months he had habitually behaved toward her in such cruel and inhuman manner as to indicate a settled aversion to her and to destroy permanently her peace and happiness. She asked for alimony in a lump sum of $6,000, and for $30 per month permanently.

In addition to a traverse of the allegations of the petition, defendant, by answer, set up at great length matters concerning the conduct of plaintiff toward him, the amount of property she had acquired by reason of their marital relation, their respective ages and physical condition, and the value of his estate, as bearing on the question of her right to alimony. He made his answer a counterclaim, and sought divorce on the ground that plaintiff had been guilty of such lewd and lascivious behaviour as proved her to be unchaste.

After proof had been taken, plaintiff offered an amended petition alleging that the grounds alleged for divorce in defendant's answer and counterclaim were false and unfounded and were made without reasonable grounds, and for the willful and malicious purpose of defaming plaintiff's character and reputation and injuring her standing in the community; that she had been damaged thereby in the sum of $2,500; that these unfounded charges in themselves constituted a cause for divorce on the ground of cruel and inhuman treatment; that these grounds, when considered in connection with the inhuman treatment alleged in her petition and proved by her, warranted a substantial increase in the amount that should be awarded her by the court on her original petition. She also set up a number of articles which she owned but left at the home of defendant, and the value of the several articles, and asked that they be restored to her, but if this could not be done that she have judgment for their value.

The chancellor rendered a memorandum opinion which appears in the record, and entered judgment decreeing plaintiff an absolute divorce and awarding her alimony in the sum of $250. It was further adjudged that the respective parties have and retain title to any and all property in their possession; that plaintiff recover all her costs, including attorney's fees of $250. It was further adjudged that the amended petition seeking to recover certain personal property which was marked "filed" by the clerk should not be filed in the action, but should be made a part of the record for the purpose of appeal only.

Plaintiff prayed and is prosecuting an appeal from so much of the judgment as refused to allow her the full amount of alimony prayed by her in her petition, and refusing to allow her the property mentioned in her amended petition.

Since the question of alimony and property rights is all that is or could be involved on appeal, it will be unnecessary for us to detail or review the evidence, except so far as it may have a bearing on that phase of the case.

The parties were married in August 1931, being the second matrimonial venture of each of them. Appellant left the home of her husband in Barren county in the early part of August, 1934, taking up residence in Allen county, where she immediately filed this suit for divorce. At the time of their marriage, appellant was about 27, and appellee 41 years her senior; so at the time of the divorce their ages were about 30 and 71, respectively. Appellant was divorced from her former husband and retained the custody of their only child, a son now past 11 years of age. The evidence discloses that prior to her second marriage appellant had no estate and because of lack of education, experience, or training she was forced to engage in manual labor as the only means of acquiring a livelihood for herself and son. It is shown that for a time she was engaged in husking corn in Illinois. When she went to the home of appellee she carried along all her property consisting of some personal effects wrapped in a sheet, and a sow and pigs which appellee had given her. When she left his home, she took away two truck loads of furniture and personal effects, some cattle, hogs, poultry, an automobile, the second she had owned after her mar--

riage, and a pony belonging to her son. This property she had acquired either as a gift from appellee or by her activities while she lived with him. The son also had a considerable bank account for a youth of his age and circumstances, and appellant possibly had some money. During their marriage appellee conveyed to his wife as a gift a tract of land containing 25 or 30 acres of a value of about $500 or $600 and upon which he erected a barn at a cost of about $300.

Appellee owns a farm of about 320 acres, some of which is valuable river bottom land which is fairly well improved by a residence, barns, and other buildings. Some witnesses for appellant fixed the value of this land at $20,000 or more, but most of these witnesses were relatives of appellant and most of them had culti- vated land either as tenants or hired laborers and did not evince much qualification as witnesses on real estate values. Appellee introduced a number of landowners and persons showing qualifications to speak as to land values, including men who had viewed and made an appraisement of the land in connection with appellee's application for a loan thereon from the Federal Land Bank. Their evidence as to the value of the farm ranged from about $8,000 to $12,000. Appellee owned very little personal property, and there is a mortgage against his farm which, including interest, amounts to about $7,000. In addition to the amount appellee will be required to pay under the judgment, he has some other small obligations. According to the evidence of appellee and other lay witnesses, and of a physician who made an examination for the purpose of testifying, he is afflicted with paralysis agitans which the doctor testified is progressive and incurable. The evidence shows that because of his advanced age and this afflic- tion he is incapacitated and unable to work. According to the weight of evidence, appellant is a healthy, vigor- ous woman, and was not instrumental in the accumula- tion of any of appellee's property. On the other hand, substantially all the property which she and her son own came to them as a result of appellee's indulgence and bounty.

In a well-considered opinion, the chancellor summed up the evidence and concluded that after he satisfied the judgment, paid his own counsel and other obligations, including the mortgage against his farm, appellee's es-

tate would not be worth more than $2,000; and that the property obtained by appellant by virtue of the marital relation was almost equal in value to that amount. In the opinion it is said that under section 2121, Kentucky Statutes, appellant might be required to account to appellee for the greater portion of the property which she now holds, however, she would be allowed to retain same, but this would be taken into consideration in allowing alimony; and would have been considered as full satisfaction for her claim, had it not been for the unfounded and unwarranted charges of lack of chastity made against her by appellee; that on account of that charge she would be allowed alimony in the sum of $250, but her request for restoration of the property mentioned in the amended petition would be denied.

Apart from the countergrounds alleged for divorce which he failed to sustain and which the evidence reveals to have been practically unfounded, it is to be doubted if appellant would have been entitled to a divorce on the grounds alleged in her petition; the evidence concerning family differences showing the parties were about equally to blame. In determining the alimony, the court took account of these matters as well as the value of appellee's estate, his income, age, health, capacity and ability to labor, and the extent to which the wife had been instrumental in accumulating his estate; also her age, health, and station in life and other like relevant circumstances. This was proper. Watkins v. Watkins, 202 Ky. 141, 259 S. W. 20; Simpson v. Simpson, 201 Ky. 282, 256 S. W. 412; Cecil v. Cecil, 200 Ky. 453, 255 S. W. 64; Lewis v. Lewis, 204 Ky. 5, 263 S. W. 366; Miller v. Miller, 224 Ky. 234, 5 S. W. (2d) 1041; Littleton v. Littleton, 229 Ky. 353, 17 S. W. (2d) 204. While the wife may be allowed alimony when granted a divorce, though not entirely without fault (Stiles v. Stiles, 224 Ky. 526, 6 S. W. [2d] 679), there is no fixed rule for the determining of what portion of the husband's estate should be awarded as alimony. That is a matter left to the sound discretion of the chancellor to be determined from all the facts and circumstances in the particular case. Kelly v. Kelly, 183 Ky. 172, 209 S. W. 335.

From a careful review of the record and a consideration of the responsibilities of the parties for the family differences and the other factors to be taken into account as revealed by the evidence, it is quite appar-

ent that the chancellor, in determining property rights and the alimony to be allowed, was very liberal toward appellant. See Beall v. Beall, 80 Ky. 675, 4 Ky. Law Rep. 652; Simpson v. Simpson, 219 Ky. 602, 292 S. W. 1087. Since the chancellor's finding is amply sustained by the evidence, it should not be disturbed.

Judgment affirmed.