### GIBSON et al.   v.   GIBSON et al.

Court of Appeals of Kentucky.

June 18, 1954.

Rehearing Denied Nov. 12, 1954.

Joseph M. Hayse, Nellie S. Hayse, Louisville, for appellants.

C. L. Bell, Louisville, for appellees.

CULLEN, Commissioner.

On April 14, 1950, Mrs. Winabeth Ann Huff Gibson brought suit for divorce against her husband, Kenneth Bernal Gibson. She asked for custody of their son, then three years old; for a permanent maintenance and support allowance in the amount of $500

per month; and for lump sum alimony in the amount of $10,000. Pending the action, the court allowed her temporary maintenance for herself and child in the amount of $50 per week.

During the three years the action was pending, Mr. Gibson paid some $7,800 to Mrs. Gibson by way of temporary maintenance, some of the payments being made under compulsion of a contempt order pursuant to which he was confined in jail for a period of time. See Gibson v. Stiles, Ky., 240 S.W.2d 609, and Gibson v. Bax, Ky., 241 S.W.2d 988.

Shortly after the action was commenced, Mrs. Gibson attached an automobile which she claimed belonged to her husband but which was registered in the name of his aunt. To secure the release of the automobile from the attachment, Mr. Gibson, with his mother as surety, executed a bond which on its face was a bond to perform judgment under Section 221 of the Civil Code (now KRS 425.305(1)). The automobile was released, but later was attached again, and eventually it was sold and the proceeds were applied to the temporary maintenance payments. Mr. Gibson's mother intervened in the divorce action and asked that the bond under which the automobile first was released be reformed so as to constitute merely a forthcoming bond, under Section 214 of the Civil Code (now KRS 425.280(1)), and that as so reformed the bond be declared satisfied and discharged.

On April 14, 1953, final judgment was entered in the divorce action. This judgment granted Mrs. Gibson a divorce; awarded her custody of the child; granted her $3,000 as lump sum alimony; adjudged Mr. Gibson liable for $720 in delinquent temporary maintenance payments; required Mr. Gibson to pay $30 per week in the future for the support of the child; allowed Mrs. Gibson's attorneys a fee of $2,500 to be paid by Mr. Gibson; reformed the performance bond executed in connection with the attachment so as to constitute it a forthcoming bond, and declared the bond to be satisfied and discharged.

Mrs. Gibson has appealed from the judgment, claiming that the allowances for alimony and for support of the child are inadequate, and that the bond should not have been reformed. Her attorneys also have appealed, contending that the allowance for their fee is inadequate. Although Mr. Gibson was granted a cross appeal by the lower court, he did not perfect it.

The difficulty with Mrs. Gibson's contention concerning the inadequacy of the allowances for alimony and support is that she has been unable to prove to any degree of satisfaction that her husband has any estate or any certain earning capacity. It appears that Mr. Gibson's training and experience have been solely in the field of professional gambling, and he claims to have no talents or ability in any other field. Mrs. Gibson was unable to prove that he has any estate, and the nature of his activities since the divorce suit was commenced has been such as to make it extremely difficult to uncover any evidence as to his earning capacity.

Mrs. Gibson testified that before they separated early in 1950, she and her husband lived in luxury, as they moved about the country in connection with his gambling activities, and that in one two-month period he earned around $10,000. However, her proof as to his activities since the separation was only that he had been employed from time to time in various places where gambling was being conducted, and that he occupied expensive hotel accomodations at those places. She did offer some hearsay evidence as to how much he had earned by gambling at one place in Michigan, but of course that evidence was incompetent. The only paper evidence of his income consisted of some income tax withholding slips showing that he had earned $50 per week as a bartender at the place in Michigan. Of course Mr. Gibson did manage, under considerabe compulsion, to pay the temporary maintenance allowance of $50 per week during the three years the divorce suit was pending, which is evidence that he had some capacity to earn money.

882

However, that evidence does not establish in any way the extent of his earning capacity.

Mr. Gibson maintains that since the nation-wide clamp-down on gambling in 1950 the opportunities for earning money in his chosen profession have been practically eliminated, and he has been able to earn only small amounts of money as a bartender and as a wine salesman. We are not inclined to believe that the situation is as bad as he pictures it, because it is clear that he has continued to associate with gamblers and to frequent gambling establishments. However, we cannot find any satisfactory way of determining his earnings, from the record before us.

 It appears that Mrs. Gibson preferred that alimony be awarded her in a lump sum. This being the case, it was incumbent upon her to establish her husband's present ability to pay the sum she sought. Under the evidence in this case we cannot say that the lump sum allowance of $3,000, taken into consideration with the $7,800 her husband has paid by way of temporary maintenance is inadequate. Nor can we say that the allowance of $30 per week for support of the child is inadequate.

We can find no basis for increasing the award of $2,500 as a fee to Mrs. Gibson's attorneys. While it is true that they rendered extraordinary services, a great deal of those services were in efforts to coerce the payment of temporary maintenance and in litigating the question of ownership of the attached automobile. When we consider the net results achieved, we cannot say that the fee is inadequate.

As concerns the matter of reforming the bond that was executed by Mr. Gibson's mother to secure the release of the automobile from the attachment, the evidence was such as to warrant a finding that Mr. Gibson and his mother intended to execute merely a forthcoming bond, and that the performance bond was executed by mistake or inadvertence. It is our opinion that the court had power to grant relief from such mistake, under the circumstances of this case.

The bond was executed as part of a proceeding pending in the court, and under Section 221 of the Civil Code (now KRS 425.305(1)) the bond was required to be approved by the court. We think that the court retained jurisdiction over the bond and that its power to reform the bond was not subject to all of the restrictions that govern reformation of an ordinary contract between individuals. To the extent that a contrary view was expressed in Leet & Co. v. Green, 151 Ky. 632, 152 S.W. 772, that case is overruled.

The purpose of the original attachment was accomplished by reason of the ultimate sale of the automobile and the application of the proceeds to the temporary maintenance payments. Under the circumstances, we cannot say that the court abused its discretion in reforming the bond and declaring it to be satisfied and discharged.

The judgment is affirmed.