**Edith Pauline SHARP, Appellant,**

v.

**Herbert SHARP, Appellee.**

Court of Appeals of Kentucky.

Oct. 14, 1955.

Hatcher & Lewis, Elizabethtown, for appellant.

Faurest & Montgomery, Elizabethtown, for appellee.

STEWART, Chief Justice.

In this case each party to this action sought a divorce and the custody of their three children. The chancellor granted appellant a divorce upon grounds of cruel and inhuman treatment, the custody of the children except for the month of August in each year and the first weekend of each month, the ownership of an automobile, the use of all household furniture for herself and children so long as she remains unmarried, and an allowance of $95 per month for the maintenance of the children. Costs and attorneys' fees were also adjudged against appellee.

A reversal is urged because it is contended: (a) Appellant was entitled to be adjudged restoration of certain property; (b) appellant was not awarded any alimony; and (c) appellee should not have been granted partial custody of the children. We shall consider the first two grounds together.

When appellant instituted proceedings for divorce, she asked for restoration of her alleged equity in a 1947 Sparton Manor housetrailer and in the household furniture. She testified she had paid $2000 on the purchase price of the housetrailer and $261.70 then due on the household furniture debt. These two items, she insists, should have been restored to her in cash. Furthermore, she asked the chancellor· to set aside the remainder of this property, and such additional sum as should ·be deemed reasonable, as alimony. She contends her claim for restoration was denied and no alimony was awarded her.

The record discloses the parties were married in 1943. All the witnesses testified they lived together peaceably until eight or ten months before appellant sued for divorce. According to appellee, and his evidence is well substantiated on this point, domestic trouble began to develop between them when appellant became interested in one Wilbur Cundiff. After she had been going out on Saturday nights with the latter for some months, her apparent infatuation for Cundiff caused her to leave appellee and go to the home of her stepfather to live, and she took all the children with her.

Subsequently, appellant and appellee entered into a separation agreement whereby appellee paid to appellant $1,300. Shortly thereafter, they patched up their marital

differences and agreed to go back together and live at a different house in the country near Elizabethtown. After they were reunited, appellant bought a car for $925 and paid off a debt of $261.70 on the household furniture. These sums were paid out of the $1,300 settlement. Some eight months later, a serious argument arose between them over appellant's alleged suitor, Cundiff, and this led to a fight whereby appellant received severe bruises which, she testified, were inflicted on her by appellee with a poker. The divorce suit followed and we have already detailed its outcome.

■ Appellee is, and for some time has been, employed at Elizabethtown as a filling station operator. His present weekly salary approximates $55. Appellant maintains that, for nearly a year and a half before their separation, she performed services as an assistant in running the filling station, and, for such services, she contends she was entitled to receive $2,000 out of the profits earned during this period of time. The uncontradicted evidence is she did not help at the station on Wednesdays, Saturdays, Sundays, and often not on Mondays, nor did she stay there late in the afternoon or at night. Neither party attempted to separate the income while she was operating the station from the income while he was operating it, and most, if not all, of the profits were spent on family living expenses. More than that, it was not definitely established how much the filling station earned over the year and a half in controversy. We also gather from the evidence that the help rendered appellee was with the thought in mind of aiding the family to pay current expenses.

At the time of the divorce, appellee owned the housetrailer, above mentioned, valued at $800, a 1953 Ford automobile, and household furniture worth $1,021.70. He also had a bank account in the sum of $1,016.73. The value of the car is not shown but its worth would not exceed $1,000. The aggregate of appellee's assets amounted to $2,838.43. His debts consisted of $1,563.44 owed by him to one Guy Williams and the sum of $760 still due on the household furniture, or a total of $2,323.44. Subtracting his debts from his assets, we find appellee's net worth to be $514.99.

The chancellor found and adjudged that appellee's services at the filling station did not constitute a valuable consideration within the meaning of KRS 403.065 to the extent that such would justify an order restoring any sum of money to her. Although she testified she paid $2,000 on the housetrailer, the evidence plainly shows she claimed this sum for services at the filling station. As to the household furniture, as has been mentioned, the use of it was awarded to appellant and the children for as long as she remains single. Title to the car she had purchased for $925 out of the money appellee had donated to her was bestowed upon her. In working out a settlement between the parties, the chancellor took into consideration the $1,300 appellant had received from appellee. On the other hand, appellee was saddled with debts that practically aggregated the value of the property awarded him.

We believe the chancellor's refusal to award appellant the cash she claimed was not error. She did not establish any sum to be due her.

■ In fixing the amount of alimony, the elements to be considered are: The size of the husband's estate, his income and earning capacity, the ages and abilities of the husband and wife to labor, the principal cause of the divorce, the relative responsibilities of the parties, and whether or not the wife has aided in the accumulation of the husband's estate. Jones v. Jones, 261 Ky. 647, 88 S.W.2d 673; Lewis v. Lewis, 204 Ky. 5, 263 S.W. 366; Watkins v. Watkins, 202 Ky. 141, 259 S.W. 20. When we apply the foregoing elements to the facts of this case we are unable to say that the chancellor erred in his division of the property in this case.

■ We are also not inclined to disturb the determination made by the chancellor as to the custody of the children. Since all the witnesses, other than appel-

lant, testified that appellee was a proper person to care for them, we believe it was not unreasonable for the chancellor to grant him the custody of the children during the month of August of each year and the first weekend of each month. This decree is of an interlocutory nature and, if the arrangement worked out should be detrimental to the welfare of the children, the decision as to them may be revised at a proper hearing.

Wherefore, the judgment is affirmed.