**Daynon W. HICKS, Appellant,**

v.

**Mary F. HICKS, Appellee.**

Court of Appeals of Kentucky.

May 11, 1956.

J. P. Karem, Karem & Karem, Louisville, for appellant.

W. Clarke Otte, T. J. Nohalty, William S. Hamilton, Louisville, for appellee.

MONTGOMERY, Judge.

Mary F. Hicks, appellee, sought a divorce on the grounds of cruel and inhuman treatment and adultery. Daynon W. Hicks, appellant, by counterclaim, sought a divorce on the ground of cruel and inhuman treatment. Judgment was rendered granting appellee a divorce; $7,000 with 5% interest from date of judgment, secured by lien on residence property, for (a) her contribution on the purchase of the residence property, (b) subsequent accumulation of the equity therein, and (c) lump sum alimony; $150 alimony per month; $3,000 for her attorneys; and her costs. Appellant was adjudged to be the sole owner of the residence and a restaurant business and property. A restoration of property was decreed, except appellee was permitted to keep an auto and personal gifts from her husband, and appellant was to keep $1,000 supplied by appellee on purchase of the residence. Appellee has filed a cross-appeal.

The controversy on appeal concerns the allowance of $7,000 and the alimony of $150 per month. Appellant contends that the allowances are too much and the periodic alimony allowance should have been denied since he feels that the divorce should have been granted to him. He also urges that the alimony paid pendente lite should have been credited on the lump sum allowed. Appellee says that the allowances are too small.

The evidence was heard by a commissioner. Objections to his report were filed by both parties. After a hearing on the objections, the Chancellor heard additional evidence, over objection by appellant. Such action is proper. CR 53.04(2).

Appellant and appellee were married on May 13, 1947, and are 39 and 27 years of age, respectively. Appellant had two children by a previous marriage. Upon the death of the mother of the children in August 1950, appellant brought them to his home, where one infant daughter still resides and the other resided until her marriage on January 30, 1953. The Chancellor found that the presence of the two children in the home contributed to the domestic strife between the parties since they, apparently, failed to adjust well to the changed conditions of their home after the children came to live with them.

Appellant and appellee lived together as man and wife until March 5, 1952, when appellee left their home, taking her personal belongings. This action was filed on the day of separation. Without going into the details of the proof, the Chancellor found that the charges of adultery and cruel and inhuman treatment against appellant were sustained.

At the time of the marriage and for three years thereafter, appellant owned a restaurant called Kupie Lunch at Fifth and Walnut Streets in downtown Louisville. Appellee had worked there for several years prior to the marriage and continued to work there after the marriage. Within two weeks after the marriage, appellant opened a drive-in restaurant known as Hicks Drive-In Restaurant on Dixie Highway. While he was operating this venture, his wife managed the Kupie Lunch until it was sold in 1950 for $25,000. The development of the drive-in restaurant was found by the Chancellor to have been due almost entirely to the business acumen and ability of appellant, rather than to any assistance from ap-

pellee. After the sale of the Kupie Lunch, appellee was occupied primarily with the duties of keeping their home and looking after appellant's two children.

Shortly after the marriage, the parties purchased a residence. Appellee contributed her savings of $1,000 on the purchase price, which was between $14,000 and $15,000. This property increased in value to between $22,000 and $25,500. It is urged on behalf of appellee that the savings resulting from her labor as manager of the Kupie Lunch for three years was a contribution on the purchase of the home.

The evidence was conflicting as to the income from and value of the drive-in restaurant. One real estate man placed the value of the land and improvements, aside from the value of the business as a going concern, at $66,475, while another realtor fixed its value at $52,500. There was a wider difference of opinion on the value of the business as a going concern.

The parties stipulated that the books and records of the business showing total assets of $86,660.74 were correct. Appellant's bookkeeper testified that the drive-in restaurant had a net profit of $30,340.10 for the calendar year of 1952, the last full year of which there was a record. A certified public accountant, who had handled some tax matters for appellant, estimated the average annual net profit for the period from June 1949 through 1952 to be $22,000. There was proof that appellant's liabilities were between $30,000 and $35,000. The accountant, on the basis of an audit by his firm, fixed appellant's net worth at approximately $50,000 as of June 1950. Counsel for appellant, in their brief, do not question the figures on the property value and income, but contend that appellee was not entitled to a divorce in the first instance and, therefore, she is not entitled to the alimony allowed.

In Petrie v. Petrie, Ky., 262 S.W.2d 182, 183, it was held:

"The determination of the amount of alimony, the form of its payment and the amount of maintenance and support are all matters resting in the sound discretion of the chancellor, which matters are to be decided on the peculiar facts of each particular case. Dalton v. Dalton, 304 Ky. 223, 200 S.W.2d 469; Osten v. Osten, 286 Ky. 473, 151 S.W.2d 67. * * *"

The Chancellor in determining the amount and manner of the alimony to be paid is guided by no formula but, in his discretion, should consider the following elements with respect to each party: size of estate, income, earning capacity, age, ability to labor, health, and station in life. The cause of the divorce and the relative responsibility of the parties, as well as whether or not the wife has assisted in the accumulation of the property concerned, should also be considered along with any other pertinent matter. Support of children is a factor involved in some cases. The payment of alimony, either temporary or permanent, periodic or lump sum, must, of necessity, be decided upon the facts of each case, since all of the elements mentioned may or may not be present in each case. Brandenburg v. Brandenburg, 246 Ky. 546, 55 S.W.2d 351; Jones v. Jones, 261 Ky. 647, 88 S.W.2d 673; Ahrens v. Ahrens, 313 Ky. 55, 230 S.W.2d 73; Oldham v. Oldham, Ky., 259 S.W.2d 42; Patterson v. Patterson, Ky., 266 S.W.2d 91; Sharp v. Sharp, Ky., 283 S.W.2d 172.

A review of the record shows that the Chancellor considered all the appropriate elements mentioned above in fixing the amounts and methods of payment of alimony. In particular, some of the elements considered were the ability of appellant to pay periodic alimony by reason of his large income as related to the property owned and the payment of a lump sum. The age, health, and ability of appellee to work were considered in relation to the effect on her health, of three abortions and a hysterectomy, and her participation in the blame for the marital strife. Appellant's obligation to his small daughter and the need for a home for her were considered. The argument that the alimony pendente lite should be credited on the lump sum allowed is without merit, since the Chancellor took such payments into consideration in determining

the amounts of the other payments to be made. Gibson v. Gibson, Ky., 271 S.W.2d 880. The lump sum allowed covered three separate items. It is evident from the record, including eleven volumes of testimony, that the Chancellor made a very conscientious effort to arrive at a fair determination of the rights of the parties, and considering the quality of the testimony on certain issues, we feel that he was successful.

The decision of the Chancellor will not be disturbed. Newby v. Newby, Ky., 275 S.W.2d 779; Waits v. Waits, Ky., 277 S.W.2d 5.

Judgment is affirmed on the appeal and cross-appeal.