**Ethel Ann DUVALL, Appellant,**

v.

**Wavy E. DUVALL, Appellee.**

**Wavy E. DUVALL, Appellant,**

v.

**Ethel Ann DUVALL, Appellee.**

Court of Appeals of Kentucky.

March 15, 1968.

Rehearing Denied Oct. 4, 1968.

James A. Hubbs, S. Rush Nicholson, Louisville, for appellant & cross-appellee.

Blakey Helm, Joseph B. Helm, Louisville, for appellee & cross-appellant.

EDWARD P. HILL, Judge.

Seeking more alimony, Mrs. Duvall appeals from a judgment awarding her $17,-964.52 "permanent alimony." Mr. Duvall filed a separate appeal and a cross-appeal in which he questions the allowance of $3,-000 attorney fee to Mrs. Duvall's lawyer.

The parties were married in 1922. Seven of ten children born to their marriage are still living. Their married life began on a 115-acre farm in Sunfish, Kentucky, near Mammoth Cave. They both worked hard and were frugal. After the Second World War, they moved to Louisville, Kentucky, where they continued their industry and thrift and the rearing of their large family.

Trouble came in 1960, when Mrs. Duvall sought and obtained a divorce from bed and board (a mensa et thoro). She was awarded $300 per month "alimony" beginning November 1, 1960, the furniture, a Buick automobile, and $7,150 from the sale

of their "uncompleted home located in Radcliff."

Mr. Duvall filed suit for an absolute divorce on June 14, 1965. Judgment granting an absolute divorce (a vinculo matrimonii) was entered June 15, 1966. And with certain amendments and supplemental orders, the chancellor found that as of the date of judgment (June 15, 1966) the reasonable market value of Mr. Duvall's estate was $110,150, from which he deducted $36,156.43, the amount (stipulated by agreement) of Mr. Duvall's indebtedness in December 1960. The chancellor's calculations thus fixed Mr. Duvall's estate at $73,993.57, from which he deducted $20,-100, representing monthly alimony payments over the previous five-year period. This left $53,893.57. He awarded Mrs. Duvall one-third of this amount ($17,964.-52).

The parties lived together thirty-eight years. They had practically nothing of this world's goods when they started. Mrs. Duvall gardened, canned food for winter, did housework, made clothing for the children, and performed the hundreds of menial tasks done by a woman in the process of producing and caring for ten children. Mr. Duvall was equally busy with his usual farm work, hauling crossties and sawlogs, and anything else he could find to do to sustain his growing family and get ahead.

Mrs. Duvall is now past sixty-five; Mr. Duvall is two years her junior. Mrs. Duvall claims she is in poor health, and this contention is supported in the medical evidence. Mr. Duvall has substantial income-producing property, and he pays himself $700 per month from his furniture business.

Before discussing the first argument presented by Mrs. Duvall, that she is entitled to monthly support payments in addition to the lump sum allowed her by the judgment, we deem it a more logical arrangement to review the findings of fact and conclusions of law of the chancellor with respect to the lump sum allowance of $17,-964.52.

We get a better picture of the chancellor's findings by repeating them in bookkeeping form:

| | |
|---|---|
| Gross Estate 1965 | $110,150.00 |
| Debts (1960) | −36,156.43 |
| | 73,993.57 |
| Paid to Mrs. Duvall (5 years) | −20,100.00 |
| | $53,893.57 |

Obviously, as noted above, the chancellor took one-third of this amount as a basis for allowing Mrs. Duvall $17,964.52. Mr. Duvall's gross estate of $110,150, as found by the chancellor, is accepted as the fair value thereof. Certainly this finding is not clearly erroneous. CR 52.01.

Mrs. Duvall questions the correctness of the findings of fact wherein the chancellor deducted $36,156.43, a figure representing the debts of Mr. Duvall in 1960, at the time of entry of divorce from bed and board. She claims the evidence in the present case shows the debts to be only $13,000. It was stipulated by the parties that in 1960 the debts amounted to $36,-156.43. It would appear at first impression that debts existing at time of trial should have been used in lieu of those five years before. However, after 1960 Mr. Duvall made an addition to the furniture store at a cost of $1,200; caused the used car lot to be blacktopped at a cost of $2,556; kept the taxes paid on the property and kept it in repair. He also paid his personal income taxes, both state and federal.

Mrs. Duvall argues that the income from the estate in which she had an interest produced more than a sufficient amount to allow Mr. Duvall to make such improvements and meet the above-listed expenses and, in fact, were sufficient to meet the amount of alimony ($300 monthly) paid to her over the five-year period. We find this only partly true.

■ Inasmuch as KRS 403.050 exempts property acquired after divorce from bed and board, it would seem fair to exclude from the gross value of Mr. Duvall's estate such improvements as the addition to the furniture store ($1,200) and the blacktop job ($2,556). The value of the services of Mr. Duvall in creating this income may well fall in the same category. Certainly a large part of it.

■ Without reaching a specific conclusion as to the proper date or determining the amount of debts, we pass to the $20,100 item, representing alimony paid by Mr. Duvall to Mrs. Duvall during the five years previous to trial. Mrs. Duvall insists it was error to charge her with this amount. The question thus presented is one of many instances in which the court has not followed a consistent course as may be seen from the following quotation from Heustis v. Heustis, Ky., 381 S.W.2d 533, 535:

"In Wheeler v. Wheeler, Ky., 238 S.W.2d 1001, 1003 (1951), it was held that temporary alimony should be credited on the award of permanent alimony. In Oldham v. Oldham, Ky., 259 S.W.2d 42, 44 (1953), the Wheeler case apparently was treated as a precedent establishing a standing rule or principle to that effect. To clarify the question, we think the correct rule is exemplified by the later case of Hicks v. Hicks, Ky., 290 S.W.2d 483, 485 (1956), in which it was recognized that the allowance or non-allowance of pendente lite alimony payments as a credit toward the ultimate award is a matter to be taken into consideration by the chancellor in fixing the amount of the permanent award. For example, had he so chosen in this case the chancellor could have awarded more than $49,-000 in cash alimony. The record makes it clear that in fixing that amount he took into consideration, by expressly disallowing them as a credit, all such amounts as had been paid theretofore."

In the instant case we do not attempt to decide whether it was proper or improper to charge Mrs. Duvall with alimony received during the period of the divorce from bed and board. Although as a general proposition it should not be deducted, for the duty of the husband to support his wife continues after divorce from bed and board. However, upon the recent authority of *Heustis,* supra, the chancellor did take "into consideration" pendente lite alimony payments (we correlate pendente lite payments with bed and board payments). And in the light of Mr. Duvall's valuable efforts, his work and labor in increasing the value of and in supervising the management of the estate, we cannot say the chancellor erred in using the 1960 debts or in charging Mrs. Duvall for advancements.

In connection with the matters just discussed, it may also be pointed out that in 1960 Mrs. Duvall was given the furniture, a Buick automobile, and $7,150 representing one-half of the sale price of certain real estate. Shortly after 1960, she was paid $555, representing one-third of an amount received for right of way sold over joint property. All these matters were pertinent on the final determinations of what amounted to an "equitable allowance" under KRS 403.060.

■ It would appear here that we are approving the judgment of the chancellor, and we are so far as it goes. However, the lump sum award of $17,964.52 will not go far at $300 per month (less than 60 months). Considering the age and the health of Mrs. Duvall and the age, the health, and the income of Mr. Duvall, we are convinced Mrs. Duvall is entitled to $300 per month alimony in addition to the lump sum allowance, subject, of course, to be terminated upon her death or remarriage. Cf. Howard v. Howard, 314 Ky. 685, 236 S.W. 2d 932.

In deciding to allow future monthly payments of alimony in lieu of increasing the lump sum allowance by the chancellor, we have considered the difficulty of raising such amount with debts already outstanding.

There remains the question advanced by Mr. Duvall that $3,000 allowed the attorney for Mrs. Duvall is excessive. The same attorney was allowed $1,500 in the case in which divorce from bed and board was entered.

The courts are placed in an awkward position in fixing fees in divorce actions as in some other cases in which the courts are called upon to fix attorney fees. In reality the court is asked to make a contract for the parties. The attorney whose duty it is to resist the amount of such fees likewise finds himself in an embarrassing position, as he may be demanding a fee next week.

The bench and bar should therefore guard against excessive fees. There is a schedule of minimum fees promulgated by the Kentucky State Bar Association and the Jefferson County Bar Association, which is of some assistance.

We recognize that the schedule of fees in Jefferson County is larger than in some rural communities and understandably so due to larger overhead expense and cost of living. The fee allowed in the present case appears to be most liberal; but, in view of the additional recovery directed by this opinion and the services rendered on this appeal, we hesitate to say it is excessive or exorbitant. The record is large and the recovery, including the future monthly alimony realized by the prosecution of this appeal, exceeds $38,000, assuming Mrs. Duvall lives five years. Cf. Friedberg v. Friedberg, Ky., 333 S.W.2d 762; Gibson v. Gibson, Ky., 271 S.W.2d 880; and Tyler v. Bryant, Ky., 394 S.W.2d 454.

No additional fee should be allowed on remand of this case.

The judgment is affirmed in part with directions that it be modified to award Mrs. Duvall $300 per month future alimony.

All concur.